**FILED**

February 10 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0659

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 17

C.A. GRENZ,

        Petitioner and Appellee,

    v.

MONTANA DEPARTMENT OF NATURAL
RESOURCES AND CONSERVATION,

        Respondent and Appellant,

    and

JOHN AND ANGELA HEITZ,

        Respondents.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Garfield, Cause No. DV 17-2008-2911
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Tommy H. Butler (argued), Special Assistant Attorney General, Department of Natural Resources and Conservation, Helena, Montana

        For Appellee:

            George W. Huss (argued), Brown and Huss, Miles City, Montana

                    Argued and Submitted:  July 28, 2010
                                Decided:  February 10, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1	The Montana Department of Natural Resources and Conservation (Department) appeals from an order of the Sixteenth Judicial District Court, Garfield County that invalidated Admin. R. M. 36.25.125(3) (1987).  We reverse.

¶2	We review the following issues on appeal:

¶3	1. *Whether the District Court's order for remand constituted a final judgment under M. R. App. P. 6(1).*

¶4	2. *Whether the District Court correctly invalidated Admin. R. M. 36.25.125(3) (1987).*

¶5	3. *Whether the Montana leasing statutes require a new lessee to reimburse a former leaseholder for all the improvements previously approved by the Department.*

FACTUAL AND PROCEDURAL HISTORY

2

¶6      Grenz acquired State of Montana Lease No. 10,159 on March 1, 1996. Grenz purchased improvements made by the former leaseholder, John and Angela Heitz (Heitzes). Grenz paid Heitzes approximately $7,205 for 2.5 miles of fence and a stock water well. Grenz made additional improvements after acquiring the lease. Grenz first constructed one mile of fence along the west side of the section that borders Heitzes' property. He also repaired the existing fence, repaired the well, and built a corral. Grenz repaired the holding pond, and installed a stock water tank to use in place of the holding pond. Grenz also installed a new three inch pump, pipe, and wire on the well because Heitzes had removed their pump.

¶7      Grenz filed an improvement request form in September 1996 with the Department pursuant to § 77-6-301, MCA, and Admin. R. M. 36.25.125(1)(a). The one-page improvement request form requires the lessee to list the type, approximate cost, and location of the improvements and repairs. Grenz calculated the cost of the new improvements and repairs that he made that year at $13,897.15 based on several receipts and his own estimates. Randy Dirkson (Dirkson), the Department employee reviewing Grenz's request, approved the improvements and repairs in November 1996. Dirkson did not confirm Grenz's estimated costs.

¶8      Grenz used the improvements over the course of his ten-year tenancy. The Department put the lease up for a competitive bid when it expired. The Department awarded the bid to Heitzes in 2006. The Department notified Grenz of his option either to remove

3

improvements, to enter into a private agreement to sell the improvements, or to begin the arbitration process pursuant to Admin. R. M. 36.25.125.

¶9 Heitzes and Grenz failed to agree on the compensation for improvements. Heitzes did not want to purchase what they characterized as Grenz's movable improvements. Grenz sought compensation of $32,700 for all of the improvements, including the movable improvements. Heitzes offered $10,000.

¶10 The parties submitted the dispute to arbitrators in accordance with § 77-6-306, MCA. Each party appointed an arbitrator and these two arbitrators appointed a third arbitrator. Section 77-6-306, MCA. The three arbitrators examined all of the improvements that Grenz had made during his ten-year tenancy. Heitzes did not want to purchase certain movable improvements, specifically, the one mile of new fence that borders their property, the livestock water tank, the water pump on the well, and the corral. The arbitrators did not value the movable improvements that Heitzes did not want to purchase in accordance with Admin. R. M. 36.25.125. The arbitrators valued the rest of the improvements at $8,370.

¶11 Grenz timely appealed the arbitrators' decision to the Department under § 77-6-306(3), MCA. Grenz argued that the leasing statutes entitled him to compensation for all improvements, including the movable improvements. The Department conducted its own appraisal of the improvements and likewise did not value the movable improvements that Heitzes did not want. The Department's valuation closely mirrored the arbitrators' valuation. The Department's final decision upheld the arbitrators' valuation.

4

¶12    The Department based its decision on Admin. R. M. 36.25.125(3) (1987) (renumbered to Admin. R. M. 36.25.125(6) (1 Mont. Admin. Reg. 36-37 (Jan. 14, 2010)). The pertinent language in Admin. R. M. 36.25.125(3) (1987) remains identical to Admin. R. M. 36.25.125(6). Admin. R. M. 36.25.125(6) allows a new lessee to decide whether to purchase movable improvements and fixtures. The former leaseholder must remove the movable improvements if the new lessee does not choose to purchase them. Admin. R. M. 36.25.125(6). The movable improvements revert to state ownership if the former leaseholder fails to remove them within 60 days. Section 77-6-302(3), MCA. The Department directed Grenz to remove the movable improvements that Heitzes did not want to purchase.

¶13    Grenz timely petitioned for judicial review. Grenz sought compensation for all of the improvements. The District Court ordered Grenz to join Heitzes to the action. The Department moved for summary judgment. Grenz filed a pro se response. The court granted partial summary judgment to the Department. The court upheld the arbitrators' valuation of the improvements. The court remanded the matter to the Department, however, to value the movable improvements that Heitzes had elected not to purchase.

¶14    The court invalidated Admin. R. M. 36.25.125(6) on the basis that it irreconcilably conflicted with governing statutes and thereby exceeded the Montana Board of Land Commissioners' rulemaking authority. The court determined that §§ 77-6-302, and -303, MCA, require a new lessee to pay to the former leaseholder the reasonable value of *all* the improvements on the property, regardless of whether the improvements are movable or permanent. The court rejected the notion that the Department could authorize the new lessee

5

to choose whether the lessee wanted to purchase the movable improvements. The Department appeals.

## STANDARD OF REVIEW

¶15 A district court may grant summary judgment when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c). No issues of material fact exist in this case. We review de novo a district court's ruling on a summary judgment motion. *Plains Grains L.P. v. Bd. of Co. Commrs. Cascade Co.*, 2010 MT 155, ¶ 21, 357 Mont. 61, 238 P.3d 332. We review the district court's conclusions of law to determine whether they were correct. *Id*.

¶16 Section 77-6-306(3), MCA, authorizes a lessee to appeal to the Department an arbitration panel's valuation of improvements. Either party may petition the district court for review of the Department's final decision. Section 77-6-306(4), MCA. A district court reviews an agency's decision under the standard of review set forth in § 2-4-704, MCA. A district court must confine its review of an agency's decision to the record. Section 2-4-704(1), MCA. We apply the same standard of review. *Owens v. Mont. Dept. of Revenue*, 2007 MT 298, ¶ 12, 340 Mont. 48, 172 P.3d 1227.

## DISCUSSION

¶17 *Whether the District Court's order for remand constituted a final judgment under M. R. App. P. 6(1).*

¶18 We must address one preliminary matter. Neither party has argued to this Court that the Department's appeal presents an unappealable interlocutory judgment. *See* M. R. App.

6

P. 4(1)(b). We address this question, however, in response to the Dissent's concern that the District Court has not entered a final judgment in this matter. A party may appeal only a district court's final judgment. M. R. App. P. 6(1). A final judgment conclusively determines the rights of the parties and settles all claims in controversy. M. R. App. P. 4(1)(a).

¶19 We addressed whether an agency can appeal an order for remand from the district court in *Whitehall Wind, LLC v. Mont. Pub. Serv. Commn.*, 2010 MT 2, ¶¶ 16-18, 355 Mont. 15, 223 P.3d 907. The Montana Public Service Commission (PSC) appealed an order from the district court that remanded the matter to allow the PSC to calculate new rates for purchasing electricity from Whitehall Wind in accordance with the district court's order. *Whitehall Wind*, ¶ 18. We concluded that the district court's order constituted a final order for purposes of M. R. App. P. 4(1)(a), and, therefore, the PSC had a right to appeal. *Id.*

¶20 This appeal presents similar facts. The District Court here invalidated Admin. R. M. 36.25.125(6) and remanded to the Department to recalculate the cost of Grenz's improvements in accordance with the court's order. We conclude, like we did in *Whitehall Wind*, that to require the Department to recalculate the value of Grenz's improvements before allowing it to appeal would undermine the Department's right to appeal under § 2-4-711, MCA. The District Court's order constitutes an appealable final order. M. R. App. P. 4(1)(a).

¶21 *Whether the District Court correctly invalidated Admin. R. M. 36.25.125(3) (1987).*

¶22 The Montana Constitution established the Board of Land Commissioners (Board) as the trustee of state lands. Mont. Const. art. X, § 4. The Constitution provides the Board with the authority to "direct, control, lease, exchange, and sell" state trust lands. *Id*. The legislature also has empowered the Board to manage state lands. Sections 77-1-202, -209, MCA. The Board may set leasing rules that it considers necessary to attain the highest value for the State. *Id*.

¶23 The Board bears a fiduciary responsibility as the trustee to manage state lands in the best interest of the State of Montana (State). *Montanans for the Responsible Use of the Sch. Trust v. State ex. rel. Bd. of Land Commrs. (Montrust I)*, 1999 MT 263, ¶¶ 13-19, 296 Mont. 402, 989 P.2d 800 (discussing at length the school trust's history and constitutional underpinnings as well as the Board's trustee duties); *State ex. rel. Thompson v. Babcock*, 147 Mont. 46, 54, 409 P.2d 808, 812 (1966). The Department manages state lands under the Board's direction. Section 77-1-301, MCA. The Department, like the Board, possesses the authority to make management decisions to protect the best interests of the State. Admin. R. M. 36.25.103.

¶24 Both constitutional and statutory provisions govern the Board's obligations as a trustee. *See e.g.* §§ 77-1-201–225, MCA; §§ 77-6-201–221, MCA; Mont. Const. art. X, §§ 4, 5, 11. This Court has recognized that the Board possesses "large discretionary power" over state trust lands necessary for the performance of its duties. *Montrust I*, ¶ 57; *Babcock*, 147 Mont. at 52, 409 P.2d at 811; *Friends of the Wild Swan v. Dept. of Nat. Resources & Conserv.*, 2005 MT 351, ¶ 10, 330 Mont. 186, 127 P.3d 394. The scope of the Board's

discretionary power is not without limit. The legislature retains the ability to impose reasonable constraints upon the Board's discretion that the Board cannot ignore in carrying out its trust responsibilities. *Montrust I*, ¶ 32; *Skyline Sportsmen's Ass. v. Bd. of Land Commrs.*, 286 Mont. 108, 114, 951 P.2d 29, 33 (1997).

¶25 Against this backdrop, the Board in 1987 adopted a regulation that requires a former leaseholder to remove movable improvements from a leasehold not wanted by the new lessee. Admin. R. M. 36.25.125(6). The Department contends that the Board adopted this regulation to provide the new lessee with the discretion to operate the leasehold in any lawful manner the lessee chooses. A contrary policy would require a new lessee to buy unwanted, and, potentially outdated, movable improvements. For example, one lessee may choose to use an electric water pump on a well; another lessee may choose to use a solar panel water pump; while another lessee may need no pump at all.

¶26 The legislature has amended the leasing statutes multiple times since the Board adopted Admin. R. M. 36.25.125(6). The legislature consistently has recognized that the Board sits in a better position to make day-to-day management decisions regarding leases on state trust lands. The 1993 legislature amended § 77-6-302, MCA, and § 77-1-209, MCA, to provide the Board with more oversight over the leasing of state trust lands and to empower the Board, rather than the legislature, to determine full market value for leases of state trust lands. Mont. Sen. 424, L. 1993, Ch. 586, Sec. 5 (April 28, 1993). The legislature discussed Senate Bill 424 in depth. No one raised concerns with any of the leasing regulations previously adopted by the Board. The bill's proponents highlighted the fact that the Board

better could address the "myriad of issues" that arise from the leasing of state trust lands. Mont. Sen. Taxn. Comm. *Hearing on Sen. 424*, 53d Legis., Reg. Sess. 4-10 (March 19, 1993).

¶27 As with all administrative rules, Admin. R. M. 36.25.125(6) must be (a) consistent and not in conflict with a statute, and (b) reasonably necessary to effectuate the purpose of the leasing statutes. Section 2-4-305(6)(a)-(b), MCA. Our first task, therefore, involves how to interpret the leasing statutes, specifically, §§ 77-6-302, and -303, MCA, to determine whether Admin. R. M. 36.25.125(6) comports with the statute's purpose.

¶28 Our primary goal in interpreting a statute is to give effect to the legislative intent. Section 1-2-101, MCA; *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426. We look first to the plain language of the statutes to determine whether Admin. R. M. 36.25.125(6) directly conflicts with §§ 77-6-302, and -303, MCA. *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666. We should not glean meaning from the wording of any particular section or sentence. *Heath*, ¶ 27. We instead must read the statutes in their entirety and give meaning to each section. Section 1-2-101, MCA. We also may consider prior case law and legislative history to aid in our interpretation of a statute. *Giacomelli*, ¶ 18. We first will look to the language of the leasing statutes, and second we will analyze the statutes in the context of prior case law and legislative history to determine whether Admin. R. M. 36.25.125(6) constitutes a valid administrative rule.

10

*The Leasing Statutes*.

¶29    Section 77-6-302, MCA, outlines the process that leaseholders must follow to receive compensation for improvements. The new lessee "shall pay to the former [leaseholder] the reasonable value of the improvements." Section 77-6-302(1), MCA. The next part provides that the parties must initiate arbitration when they cannot agree on the reasonable value of the improvements. Section 77-6-302(2), MCA.

¶30    The statute's final subsection (3) addresses how the parties must handle movable improvements. Section 77-6-302(3), MCA. The former leaseholder may obtain a license from the Department to enter the leasehold to remove any movable improvements that still remain on the leasehold after the expiration of the lease. *Id.* The former leaseholder must remove any movable improvements that still remain on the leasehold within 60 days after the expiration of the lease or the improvements become the property of the State. *Id.* The former leaseholder, in addition, must reimburse the State for the period of time that the movable improvements remain on the land after the expiration of the lease. *Id.*

¶31    Section 77-6-303, MCA, provides the method for valuing the improvements and directs the Department to consider "*all* actual improvements." Section 77-6-303, MCA. (emphasis added). Section 77-6-303(1), MCA, directs the Department to value all improvements based on, among other things, the original cost, the present condition, the improvements' usefulness to the land, and the desirability to the new lessee. Grenz contends that this clear statutory language requires a new lessee to pay the former leaseholder for *all* improvements made on the leasehold, regardless of whether they are movable or permanent.

11

Grenz notes that § 77-6-303, MCA, fails to distinguish between movable improvements and permanent improvements.

¶32 Section 77-6-302(3), MCA, denotes specific treatment, however, for movable improvements at the expiration of the lease. In subsection (3), where the statute addresses movable improvements, the legislature states that "[t]he [D]epartment shall charge the former [leaseholder] for the period of time that the improvements remain on the land after the termination of the lease." Section 77-6-302(3), MCA. Admin. R. M. 36.25.125(6) provides that "[w]hen the new lessee or licensee does not wish to purchase the movable improvements and fixtures, then the former lessee or licensee shall remove such improvements immediately."

¶33 We must determine whether Admin. R. M. 36.25.125(6) directly conflicts with the leasing statutes by looking first to the plain language of the statutes and the regulation. *Giacomelli*, ¶ 18. The statutes outline a method that the Department must follow to value improvements. Although the statutes direct that consideration must be given to all improvements, the statutes also denote special treatment for movable improvements. Section 77-6-302(3), MCA. The statutes also allow the Department to consider the improvements' "desirability for the new lessee" when valuing improvements. Section 77-6-303(1), MCA. Admin. R. M. 36.25.125(6) allows a new lessee to decide whether to purchase a former leaseholder's movable improvements. The rule provides a workable method that the lessees must follow to deal with movable improvements at the expiration of the lease.

12

¶34 Grenz and the Dissent argue that Admin. R. M. 36.25.125(6) wrongly vests the discretion of whether to purchase movable improvements in the new lessee. Nothing in the leasing statutes direct that the new lessee must purchase all movable improvements regardless of their desirability to the new lessee. The leasing statutes expressly allow the Department to consider the new lessee's preferences. Section 77-6-303(1), MCA.

¶35 Grenz and the Dissent base their conclusion on the statute's direction that all improvements must be considered in the valuation process. Section 77-6-303, MCA. The Department properly considers *all* improvements when it allows the new lessee to determine what movable improvements the new lessee wishes to purchase. Admin. R. M. 36.25.125(6) provides a workable method for valuing movable improvements. We do not believe that the plain language of Admin. R. M. 36.25.125(6) directly conflicts with the leasing statutes.

*The legislative history and prior case law.*

¶36 The Dissent and Grenz fail to recognize the legislative history and prior case law that contradict their conclusion. We have recognized that a party who leases state land for a ten-year period likely would construct both permanent improvements and temporary improvements on the land. *See Montrust I*, ¶¶ 43–49. The legislature's distinction between movable improvements and permanent improvements supports this interpretation. Section 77-6-302(3), MCA. The Dissent overlooks any purpose for this distinction.

¶37 The Court in *Montrust I* invalidated two leasing statutes that addressed the Board's treatment of movable improvements, §§ 77-6-304 and -305, MCA. The Court held that the statutes improperly had allowed former leaseholders to postpone the transfer of leases.

13

*Montrust I*, ¶ 49. The two invalidated statutes had the combined effect of delaying the transfer of leases until the former leaseholder had received payment from the new lessee for movable improvements. These invalidated statutes had thwarted the effect of Admin. R. M. 36.25.125(6). The invalidated statutes allowed former leaseholders to leverage the new lessee to buy unwanted movable improvements to avoid delays in the transfer of the lease. *Montrust*, ¶¶ 49, 55.

¶38 The Court first struck down former § 77-6-304, MCA, that allowed a former leaseholder up to 60 days after the lease terminates to remove movable improvements without charge. *Montrust I*, ¶ 51. The Board contended that the 60-day grace period allowed the Department time to inventory improvements on state trust lands and had no quantifiable impact on the trust. The Court disagreed. The policy plainly granted former leaseholders "to remain free of charge" on state trust lands for up to 60 days while they removed their movable improvements. *Montrust I,* ¶ 49. The Court cited the Department's practice of postponing the issuance of new leases until the former leaseholder had removed the movable improvements. *Id.* The Department's practice recognized that the statute's effect of allowing former leaseholders to remove improvements, including "houses, cabins, and fences," after the end of the lease would deprive new lessees of quiet enjoyment and possession of their leasehold. *Id.*

¶39 The Court next struck down former § 77-6-305, MCA, on the grounds that it violated the Board's fiduciary duty by allowing a former leaseholder to forestall a new lease until the new lessee had established that the former leaseholder had been paid for improvements or

14

that the former leaseholder had elected to remove the improvements. *Montrust I*, ¶¶ 55-58. The Court recognized that a statute that allowed a former leaseholder to hijack the transfer of a leasehold to a new lessee violated the Board's fiduciary duty. *Id.* at ¶ 58.

¶40     *Montrust I* prompted the Department to ask the legislature to revise the laws governing state trust lands. Mont. Sen. Comm. on Nat. Resources, *Testimony on Sen. 31*, 57th Legis., Reg. Sess. (January 17, 2001). The legislature responded to *Montrust I* by repealing §§ 77-6-304 and -305, MCA. The legislature also added subsection (3) to § 77-6-302, MCA, to require former leaseholders to remove movable improvements within 60 days of the end of the leasehold. Mont. Sen. 31, L. 2001, Ch. 270, Sec. 5, 1275-76 (April 20, 2001). These changes eliminated the former leaseholder's ability to forestall the transfer of a lease to the new lessee.

¶41     Admin. R. M. 36.25.125(6), with its requirement that former leaseholders remove movable improvements not wanted by the new lessee, was in full force and effect at the time that the legislature amended the leasing statute. We presume that the legislature acts with knowledge of the previous construction of similar statutes or related rules and to have adopted that construction when it amends a statute. *Hovey v. Dept. of Revenue*, 203 Mont. 27, 33, 659 P.2d 280, 283 (1983); *State v. Brown*, 2009 MT 452, ¶ 10, 354 Mont. 329, 223 P.3d 874. Admin. R. M. 36.25.125(6) represents a long-standing rule that has survived multiple amendments to the leasing statutes. Admin R. M. 36.25.125(6) governed the method for dealing with movable improvements before the 2001 amendments.

¶42 The legislature's 2001 amendments to the statute addressed the problem of leaseholders leaving movable improvements on state leaseholds indefinitely. The new statute, § 77-6-302(3), MCA, essentially codified the portion of Admin. R. M. 36.25.125(6) that directs the former leaseholder to remove movable improvements. Admin. R. M. 36.25.125(6) reflects the legislature's intent. It provides a method that former leaseholders must follow to receive compensation for improvements and to remove movable improvements from state trust land that the new lessee does not want. Admin. R. M. 36.25.125(6) is consistent with and reasonably necessary to effectuate the legislature's leasing statutes.

¶43 Neither the Dissent nor Grenz believe that movable improvements must be removed. Dissent, ¶¶ 83-84. Grenz assumes from the legislature's use of the discretionary word "may" in § 77-6-302(3), MCA, that the Department does not have to allow a former leaseholder to remove movable improvements even if the former leaseholder would like to remove the movable improvements. The former leaseholder can apply for a license, according to Grenz, and the Department must decide whether the former leaseholder can remove the movable improvements or must receive monetary compensation instead.

¶44 We agree that the statute requires the former leaseholder to obtain permission from the Department before entering the leasehold after the expiration of the lease. This Court in *Montrust I* invalidated a practice whereby the former leaseholder could delay indefinitely the transfer of a lease until the new lessee had paid for the improvements. *Montrust I*, ¶ 58. The lease transfers immediately to the new lessee. The former leaseholder would have no legal

authority to enter the leasehold at that point absent the license granted by the Department. Section 77-6-302(3), MCA.

¶45 We disagree that § 77-6-302(3), MCA, vests in the Department the power to decide whether a former leaseholder must remove movable improvements or accept compensation instead. This interpretation directly conflicts with Admin. R. M. 36.25.125(6). The administrative rule affords the new lessee the discretion whether to purchase movable improvements from the former leaseholder. The rule pre-dated the legislature's 2001 amendments to § 77-6-302(3), MCA. The Dissent believes the Court wrongly has elevated the regulation over a statute. Dissent, ¶ 78.

¶46 We must presume, however, that the legislature acts with deliberation and full knowledge of all existing laws on a subject when it amends the law. *Brown*, ¶ 10. The legislature has amended § 77-6-302, MCA, multiple times since the Department adopted Admin. R. M. 36.25.125 in 1987. The Dissent highlights the 2005 amendments that added the requirement in § 77-6-302(1), MCA, that lessees must provide a list of their improvements and the improvements' value to the Department. Dissent, ¶ 87. This 2005 amendment provided yet another opportunity for the legislature to have assessed and amended the law regarding improvements if it believed that Admin. R. M. 36.25.125(6) negatively had affected Montana ranchers or the transfer of state leases. No legislators, or ranchers for that matter, expressed any concern with Admin. R. M. 36.25.125(6) when the legislature amended § 77-6-302(1), MCA, in 2005.

17

¶47 Grenz and the Dissent suggest that there are only two options before the Department: (1) the former leaseholder can remove movable improvements (*if* the Department allows), or (2) the former leaseholder must leave the movable improvements and receive monetary compensation. This interpretation also makes no sense in light of the provision in § 77-6-302(3), MCA, that the former leaseholder's failure to remove the movable improvements within 60 days after the expiration of the lease results in the improvements reverting to State ownership. Movable improvements never would revert to State ownership if the new lessee must purchase the movable improvements left behind by a former leaseholder. This interpretation renders § 77-6-302(3), MCA, meaningless.

¶48 This interpretation also cannot stand in light of the fact that this Court and the Legislature have scrutinized the leasing provisions dealing with valuation of improvements and Admin. R. M. 36.25.125(6) has survived numerous amendments to the leasing statutes. We do not believe that the Board's rule that allows a new lessee to chose whether to purchase a former leaseholder's movable improvements directly conflicts with the plain language of the statute or ignores the legislative directive in §§ 77-6-302, or -303, MCA.

*The Board's rulemaking authority*.

¶49 The Montana Constitution directs the Board to "direct, control, lease, exchange, and sell lands" for the benefit of the State. Mont. Const. art. X, § 4. The legislature codified the Board's rulemaking authority. Sections 77-1-202, -209, MCA. The Department argues that Admin. R. M. 36.25.125(6) serves the goal of good stewardship of state trust land.

18

¶50     The Board manages state trust land for the benefit of Montana's future generations. We are not persuaded that the Board's rule that requires former leaseholders to remove movable improvements unwanted by the new lessee departs from the goal of good stewardship or deprives Montana's future generations of benefit. We recognize that a contrary rule could reduce economic efficiency, endlessly develop state trust lands, and impede the transfer of state trust land leases.

¶51     *Whether the Montana leasing statutes require a new lessee to reimburse a former leaseholder for all improvements previously approved by the Department.*

¶52     We finally must analyze whether the District Court correctly determined that the Montana leasing statutes require a new lessee to purchase from a former leaseholder all improvements previously approved by the Department. The Department argues that a lessee could drive down the value of a lease by cluttering the land with improvements that could prove unnecessary for a subsequent leaseholder's use. The Department contends that these improvements could make the lease less desirable to new lessees, and, in turn, less valuable to the State. Grenz counters that the Department's previous approval of the improvements should guarantee that he receives compensation for them from the new lessee.

¶53     Much confusion arises from the fact that the Department typically approves any improvement, movable or permanent, that a lessee seeks to install on a leasehold as long as the improvement relates to the conservation or use of state land. Admin. R. M. 36.25.125(1); *see also* § 77-6-301, MCA. The Department suggests that this approval simply ensures that any improvement that the lessee seeks to install relates to the purpose of the lease—whether

19

it is agricultural, grazing, or any other purpose. A water pump on a stockwater well likely would relate to the purpose of a grazing lease. The Department likely would not quibble with the size of the pump that the lessee seeks to use, the type of pump that the lessee seeks to use, or the power source for the type of pump that the lessee seeks to use.

¶54 The Department argues that it follows this policy of liberally approving requests for installation of an improvement that relate to a lease's purpose to avoid unnecessary litigation and to allow a lessee to operate a leasehold how the lessee deems necessary for the use and conservation of the leasehold. The Department contends that its approval does not guarantee that a former leaseholder will be reimbursed for the cost of all the improvements used over the course of the ten-year leasehold. The Department does not value improvements and guarantee reimbursement as the lessee applies for the improvements approval.

¶55 Admin. R. M. 36.25.125(1) provides that a lessee may place improvements on a lease if they are necessary for the conservation or use of the land. A lessee must submit an improvements request form to gain approval. The one-page improvements request form instructs the lessee to list improvements and to include the "type and amount of materials, number of acres, and approximate cost." Nothing in the form guarantees a lessee reimbursement for all approved improvements. The statutes and the administrative rules instead provide a method for valuing the improvements when the leasehold transfers after its expiration. Sections 77-6-302, -303, -306, MCA; Admin. R. M. 36.25.125.

¶56 The Department approved all of Grenz's requested improvements in 1996. Grenz used these improvements for the life of the ten-year leasehold. Heitzes do not want Grenz's

20

movable improvements. Heitzes have their own pump and wiring for the well, and they do not need or want to purchase Grenz's pump. Heitzes do not need to use the corral or the watering tank. Heitzes do not need a mile of fence between the state section and their land because their cattle can graze freely between the two sections.

¶57 We recognize that the Heitzes, as adjacent landowners, can use the land with fewer improvements than Grenz. Neighboring landowners inevitably will have some advantages in leasing state lands. Grenz has not adequately raised the issue of whether Admin. R. M. 36.25.125(6) improperly favors neighboring landowners to the detriment of the State. We do not address this issue.

¶58 Grenz also has not argued that improvements for which he seeks compensation represent permanent improvements. The fence that borders the state section and Heitzes' private land constitutes Grenz's largest unreimbursed expense. Grenz has not challenged the Department's characterization of the fence as a movable improvement. This Court in *Montrust I* listed "fences" as improvements that a former leaseholder might want to remove. *Montrust I*, ¶ 49. The leasing statutes and the rules require the new lessee to reimburse the former leaseholder for permanent improvements. The Department properly directed Heitzes to reimburse Grenz for the permanent improvements.

¶59 The Department has used this procedure to administer state leases for almost twenty-five years. Lessees use state lands for many purposes—grazing, agriculture, cabin sites, oil and gas exploration, and timber resources. *See generally*, Title 77, MCA. Leaseholders acquire leases through a competitive bidding process. Section 77-6-202, MCA. Nothing in

the leasing statutes requires a new lessee to use the land in the same manner or for the same purpose as a former leaseholder.

¶60    The Department's rules allow new lessees to determine what movable improvements are necessary to serve their purpose in using the lease. Admin. R. M. 36.25.125(6). The Department requires only that any improvements relate to the lease's purpose. The Department does not require new lessees to purchase used and movable improvements that the new lessee does not need. The new lessee should not be required to purchase a used and removable water pump if the lessee already owns a more efficient water pump. New lessees still would be required to use windmills if the Department followed this policy.

¶61    Grenz's claim does not present the first time that parties have disputed the value of improvements on state leases. *See e.g. Winchell v. Mont. Dept. of Nat. Resources & Conserv.*, 1999 MT 11, 293 Mont. 89, 972 P.2d 1132; *Meeks v. Mont. Dept. of Nat. Resources & Conserv.*, 1998 MT 336, 292 Mont. 317, 971 P.2d 1223; *Evertz v. State*, 249 Mont. 193, 815 P.2d 135 (1991). The Department, the Board, and the legislature have created a system for leases to change ownership, for the State to obtain full market value, and for new lessees to reimburse the former leaseholders for improvements in a fair manner. Section 77-6-306, MCA, provides a procedure to reach an equitable decision when the parties cannot agree on the improvements' value.

¶62    Grenz spent $7,205 to purchase improvements from Heitzes in 1996. He estimated that he spent an additional $13,897.15 on his own improvements. Grenz used the land and these improvements for ten years. Grenz will receive $8,370 for the improvements. Grenz

22

retained the right to remove all of the movable improvements within 60 days of the termination of the lease, including the water pump and associated wiring, the watering tank, the corral, and one mile of fencing. The Department properly relied upon Admin. R. M. 36.25.125(6) and §§ 77-6-302, -303, and -306, MCA, when it concluded that Heitzes did not have to purchase Grenz's movable improvements.

CONCLUSION

¶63    We reverse the District Court's order invalidating Admin. R. M. 36.25.125(6) and uphold the Department's final decision. We remand this matter to the Department to determine how to handle any of Grenz's movable improvements that still remain on the property. Admin. R. M. 36.25.125(6) is consistent with the leasing statutes and reasonably necessary to effectuate the statute's purpose. The Department properly relied upon Admin. R. M. 36.25.125(6) when it upheld the arbitrators' valuation.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE MCGRATH
/S/ PATRICIA O. COTTER
/S/ MICHAEL E WHEAT

Justice James C. Nelson, dissenting.

23

¶64    No final judgment or order has been issued in this case by the District Court nor has the District Court certified this case for appeal pursuant to M. R. Civ. P. 54(b). Consequently, I dissent from this Court's decision to address the merits of this case.

¶65    "A party may appeal from a *final judgment* in an action or special proceeding and from those *final orders* specified in sections (2), (3), and (4) of this rule." M. R. App. P. 6(1) (emphasis added); *see also Satterlee v. Lumberman's Mut. Cas. Co.*, 2007 MT 325, ¶ 12, 340 Mont. 176, 178 P.3d 689.

¶66    In its August 7, 2009 Order, the District Court clearly stated that it granted DNRC's Motion for Summary Judgment "but only with regard to the improvements actually subjected to arbitration . . . ." The court *denied* DNRC's Motion for Summary Judgment "with regard to the improvements which were not subjected to arbitration . . . ." The court also set a time for a hearing "for the sole purpose of ascertaining the values of the improvements . . . that have not been subjected to arbitration and evaluation." Similarly, in its October 1, 2009 Order, the District Court stated that it wa*s remanding* this matter to DNRC "to review its decision consistent with [the District Court's] earlier determination that the second sentence of ARM 36.25.125(3) is invalid."

¶67    "A final judgment *conclusively determines* the rights of the parties and *settles all claims* in controversy in an action or proceeding . . . ." M. R. App. P. 4(1)(a) (emphasis added). An order that sets a time for a further hearing, as in the District Court's August 7, 2009 Order, or remanding for further proceedings, as in the court's October 1, 2009 Order, can hardly be characterized as conclusively determining the rights of the parties or settling

24

all claims in controversy. Moreover, orders denying motions for summary judgment or granting partial summary judgment, as in the court's August 7, 2009 Order, are not appealable pursuant to M. R. App. P. 6(5)(b).

¶68 Nevertheless, rather than complying with the District Court's October 1, 2009 Order remanding this matter, DNRC filed a Notice of Entry of Judgment wherein it stated that "final Decisions and Orders were entered in the above-entitled action in favor of the Petitioner, C.A. Grenz by the Court on August 7, 2009 and October 1, 2009." Since the District Court did not enter a final decision or judgment in either of its Orders, DNRC's representation is blatantly false. Furthermore, DNRC's Notice of Appeal is defective because it did not comply with M. R. App. P. 4(2)(a) and Form 1 in the Appendix of Forms in that DNRC's Notice of Appeal makes no mention of whether the appeal is certified as final under M. R. Civ. P. 54(b).

¶69 We have charged trial court's with the duty "to avoid piecemeal appeals and to 'protect parties' rights against prejudice resulting from premature appeal.' " *Satterlee*, ¶ 15 (quoting *Roy v. Neibauer*, 188 Mont. 81, 86, 610 P.2d 1185, 1189 (1980)). We should do no less ourselves.

¶70 While neither party in the instant case raised on appeal the question of whether a final judgment had been entered or a Rule 54(b) certification issued, we have in the past dismissed appeals involving trial court orders which were interlocutory in nature and lacking a final judgment *sua sponte*. *See Roy*, 188 Mont. at 83-84, 610 P.2d at 1187. This Court pointed out in *Roy* that even though the parties had not called the Court's attention to the fact that the

25

summary judgment was interlocutory in nature and that a Rule 54(b) certification had not

been obtained, "an appellate court *cannot* consider the merits of a nonfinal order." *Roy*, 188

Mont. at 84-85, 610 P.2d at 1187-88 (emphasis added). In dismissing the appeal, the Court

stated:

> "Too often this Court is confronted with cases that are not ready for appellate review within the meaning of the rules, but where the opposing parties do not bring this crucial fact to our attention. We often do not discover this until we are deeply into the process of review and indeed often in the opinion-writing state. *We cannot and will not tolerate this state of affairs.*
> *If the case is not ready for review, it should not be appealed.* If for some reason it is appealed prematurely, it is the duty of the parties to bring this to our attention by an appropriate motion to dismiss so that it can be remanded to the District Court. . . ."

*Roy*, 188 Mont. at 84, 610 P.2d at 1187 (emphasis added) (quoting *In re Adoption of BGB*,

183 Mont. 347, 357, 599 P.2d 375, 381 (1979)).

¶71   The Court relies on our holding in *Whitehall Wind v. Montana Public Service Comm.*,

2010 MT 2, 355 Mont. 15, 223 P.3d 907, to conclude that the District Court's Order in this

case constituted a final order for purposes of M. R. App. P. 4(1)(a). Opinion, ¶¶ 19-20.

However, *Whitehall* is distinguishable from the present case.

¶72   In *Whitehall*, the district court reversed an order of the Montana Public Service

Commission (PSC) setting a standard tariff rate for the purchase of electricity from

Whitehall by Northwestern Energy. *Whitehall*, ¶ 1. The court remanded the matter to the

PSC to *recalculate* the rate, taking into account certain data submitted by Whitehall and the

PSC. *Whitehall*, ¶ 14. Instead, the PSC appealed to this Court.

26

¶73 In holding that the lower court's order constituted a final appealable order, we stated that "[t]o force the PSC to *recalculate* the rate in accordance with the District Court's specific instructions before allowing it to appeal would undermine the PSC's right to appeal under § 2-4-711, MCA." *Whitehall*, ¶ 18 (emphasis added). Hence, the PSC had already made specific calculations regarding the tariff rate at issue in *Whitehall*. Not so in the case *sub judice*, the Court's contentions to the contrary notwithstanding. Opinion, ¶ 20.

¶74 Here, only the improvements the Heitzs wished to purchase were valued by the arbitrators. Because Grenz argued that all of the improvements must be purchased by the Heitzes, the District Court ordered that all of the improvements must be valued. That is why the District Court set a time for a hearing to ascertain the values of the improvements that had not already been subjected to arbitration and evaluation. Contrary to the Court's statements, Opinion, ¶ 20, there was no *recalculation* being done in this case, thereby distinguishing it from *Whitehall*.

¶75 This Court religiously requires parties to exhaust the administrative process and to obtain a final administrative order before seeking judicial review. *Shoemaker v. Denke*, 2004 MT 11, ¶¶ 18-19, 319 Mont. 238, 84 P.3d 4; *Grabow v. Montana High School Ass'n*, 2002 MT 242, ¶ 35, 312 Mont. 92, 59 P.3d 14; *Barnicoat v. Com'r of Dept. of Labor*, 201 Mont. 221, 224-25, 653 P.2d 498, 500 (1982). Here, DNRC refused to follow that rule and the District Court, correctly, ordered the agency to exhaust the administrative process. Instead, DNRC ignored the District Court's order and appealed directly to this Court. There never has been a final administrative order entered in this case, as is demonstrated by a review of

27

the record. Final orders issued by DNRC include a notice of that fact. *See Bitterroot River Protective Ass'n v. Siebel*, 2005 MT 60, 326 Mont. 241, 108 P.3d 518; *Salish and Kootenai Tribes v. Stults,* 2002 MT 280, 312 Mont. 420, 59 P.3d 1093; *Montana Power Co. v. Carey*, 211 Mont. 91, 685 P.2d 336 (1984). There is not one document in the record with DNRC's own notice of finality. This case represents yet another example of DNRC's attitude that rules and laws apply to everyone but the agency. *See Bostwick Properties v. Dept. of Natural Resources,* 2009 MT 181, ¶¶ 24-27, 351 Mont. 26, 208 P.3d 868 (Nelson, J., concurring); *Bostwick,* ¶¶ 28-30, (Rice, J., concurring); *Bostwick,* ¶¶ 31-36 (Warner, J., dissenting).

¶76     There is no question in the instant case that neither of the District Court's Orders is a final decision or judgment. Therefore, I would dismiss this appeal without prejudice and remand this matter to the DNRC to complete the administrative process as directed by the District Court in its October 1, 2009 Order. Once that administrative process is completed, the District Court may review the DNRC's determination and enter final judgment. If any of the parties are dissatisfied with the District Court's final decision, they may then appeal to this Court.

¶77     I dissent from our failure to so order.

/S/ JAMES C. NELSON

Justice Jim Rice, dissenting.

28

¶78    I believe the Court has erred in its statutory analysis and given preference to an administrative regulation over conflicting statutes, thereby rendering an incorrect decision.

¶79    In *Montrust I,* this Court addressed the constitutionality of a number of statutes governing the use of state trust lands, two of which are at issue here. *See Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Commrs. (Montrust I)*, 1999 MT 263, ¶¶ 4-9, 296 Mont. 402, 989 P.2d 800. Subsequently, the Legislature revised these statutes to cure the faults noted in *Montrust I*, which are discussed further herein. *Montrust I* did not, however, address the issue before us today—the right given to former leaseholders by statute to be reimbursed for improvements. As the Court explained in *Montrust I*, "our holding does not reach the requirement, in § 77-6-305, MCA, that former lessees be reimbursed for their improvements." *Montrust I*, ¶ 58.

¶80    As the Court explains, Admin. R. M. 36.25.125(6) does two things. It 1) "allows a new lessee to decide whether to purchase movable improvements and fixtures," Opinion, ¶ 12; and 2) "requires a former leaseholder to remove movable improvements from a leasehold not wanted by the new lessee." Opinion, ¶ 25. The Court believes that the right bestowed upon a new lessee by the regulation to reject movable improvements and to require the old lessee to remove them is consistent with statute, stating that "[n]othing in the leasing statutes direct that the new lessee must purchase all movable improvements regardless of their desirability to the new lessee." Opinion, ¶ 34.

¶81    However, to the contrary, the leasing statutes provide that "when another person becomes the lessee of the land, the person *shall pay* to the former lessee the reasonable value

29

of the improvements. The reasonable value may not be less than the full market value of the improvements." Section 77-6-302(1), MCA (emphasis added). As we noted in *Montrust I*, this constitutes a "requirement . . . that former lessees be reimbursed for their improvements." *Montrust I*, ¶ 58. The requirement of full reimbursement makes no distinction between movable and unmovable improvements.

¶82 Eligibility for reimbursement is made dependent, not on the movability of the improvements and the new lessee's desires, but on whether the improvements were pre-approved by the Department. In accordance with § 77-6-301, MCA, the Department's lease with Grenz provided that "[f]ailure to obtain approval prior to placement of the improvement may result in such improvements not being recognized by the Department for purposes of reimbursement of such improvements." As the Court notes, all of Grenz's improvements were submitted to and approved by the Department. Nowhere in Grenz's lease was he advised that a subsequent lessee could refuse to reimburse him for movable improvements he had made with the Department's approval. In fact, his lease stated just the opposite. Consistent with § 77-6-302(1), MCA, Grenz's lease promised him that, if "he desires to sell" his improvements, the "new lessee shall pay the former lessee the reasonable value of such improvements as of the time the new lessee takes possession thereof."

¶83 The Court reasons that the requirement for reimbursement for all improvements is negated by subsection (3) of § 77-6-302, MCA, which provides:

> (3) Upon the termination of a lease, the department may grant a license to the former lessee to remove the movable improvements from the land. Upon authorization, the movable improvements must be removed within 60 days or

30

> they become the property of the state unless the department for good cause grants additional time for the removal. The department shall charge the former lessee for the period of time that the improvements remain on the land after the termination of the lease.

The Court believes by this provision the Legislature has given special treatment to movable improvements such that the new lessee may reject the former lessee's movable improvements and avoid reimbursement. The Court sees within this provision a requirement that the former lessee "must remove any movable improvements" which are rejected by the new lessee. Opinion, ¶ 30. This is an errant reading of the statute which directly conflicts with the statutory directive to reimburse the old lessee for all improvements. The Court creates the new lessee's "right to reject" movable improvements, and imposes the old lessee's "obligation to remove" improvements, out of thin air. These directives are found nowhere in the statutory language, nor are they implied by the language.

¶84    Actually, this provision permits the Department to issue a license authorizing the former lessee to enter the property to retrieve the improvements if the former lessee does not "desire[] to sell" his improvements, as stated in Grenz's lease agreement. This licensure provision was made necessary by *Montrust I*, which struck down the Department's practice of delaying the transfer of the lease while improvement valuation issues were resolved. *See Montrust I*, ¶¶ 51, 58. Now, the lease must transfer immediately, and the license permits the former lessee to remove his movable improvements, if he elects to do so, while the new lessee has possession of the real property. The statute now requires the Department to "charge the former lessee for the period of time that the improvements remain on the land," §

31

77-6-302(3), MCA, to comply with the directive of *Montrust I* that trust lands not "idle indefinitely." *Montrust I*, ¶ 58. The former lessee must remove the improvements within 60 days or forfeit the improvements to the state. However, none of this new process has changed the requirement "that former lessees be reimbursed for their improvements." *Montrust I*, ¶ 58. Grenz has statutory and contractual rights to receive reimbursement for all of his pre-approved improvements, if he so elects.

¶85 This conclusion is confirmed by review of the other statutory provisions. Section 77-6-303, MCA, entitled "Determination of compensation," sets forth the factors which are to be considered in valuing the improvements and states "[c]onsideration must be given to *all actual improvements* . . . ." Section 77-6-303(1), MCA (emphasis added). Thus, the statutory factors which must be considered in determining the compensation to be paid for the improvements require valuation of all improvements, whether movable or unmovable. Similarly, § 77-6-306, MCA, providing for the arbitration process to resolve valuation disputes, states that "[i]f the owner of *any improvements* on state lands of the type authorized by law at the time they were placed on state lands desires to sell these improvements to the new lessee and they are unable to agree on the value of the improvements . . . the value must be ascertained and fixed by three arbitrators . . . ." Section 77-6-306(1), MCA (emphasis added). Again, the valuation of "any" improvement is mandated.

¶86 The Court places heavy emphasis upon a phrase within § 77-6-303(1), MCA, which provides that, in determining the value of the improvements, one factor to be considered is their "desirability for the new lessee." The Court reasons from this phrase that "[t]he leasing

32

statutes expressly allow the Department to consider the new lessee's preferences." Opinion, ¶ 34. The Court thus leaps to likewise expand this provision beyond its actual meaning. That an *arbitrator* may consider the desirability of improvements for a new lessee in *determining their value* does not mystically create authority in the *Department* to permit a new lessee to *reject improvements altogether*.

¶87    In the 2005 Legislative Session, House Bill 351 was enacted to add language to § 77-6-302(1), MCA, requiring the Department to obtain a listing of all a lessee's improvements and their reasonable values prior to bidding on the lease, and requiring that this information be provided to bidders. The legislative history of the bill indicates a concern about the loss of leases to a new bidder when "many of these lessees have made improvements on the land they are leasing." Mont. H. Agric. Comm., *Minutes of the Hearing on H. Bill 351*, 59th Legis., Reg. Sess. 2 (Jan. 27, 2005). The bill's purpose was to make the Department notify new bidders about the requirement that former lessees "receive compensation [for the improvements] from the new lessee if the prior lessee loses his bid." Mont. H. Agric. Comm., *Minutes of the Hearing on H. Bill 351*, at 2. There is no mention in the discussion about new lessees being able to reject movable improvements. Indeed, the concern was the opposite—that new lessees would be clearly advised of the obligation to compensate former lessees for their improvements. The urgency of the matter was expressed by rancher Patrick McNulty, who testified that "only a small minority of ranchers in their county do *not* have a state lease." Mont. H. Agric. Comm., *Minutes of the Hearing on H. Bill 351*, at 2 (emphasis added).

33

¶88     I am convinced the Court has manufactured a preferred outcome which is not supportable within the statutes, and has made the regulation paramount. An application of the plain meaning of the statutes—or, if necessary, the context and structure of the statutory scheme, the legislative history and our caselaw—all reveal the same result: the new lessee's "right to refuse improvements" is a regulatory creation which conflicts with statute. I believe the District Court reached the correct decision and would affirm.

/S/ JIM RICE

Justice James C. Nelson concurs with Justice Jim Rice's Dissent.

¶89     I maintain that there never was a final judgment in this case, as I state in my Dissent. However, were I to reach the merits, I would join Justice Rice's well-reasoned Dissent. Indeed, given the plain and unambiguous language of the statutes at issue, the Court's Opinion is astonishing.

/S/ JAMES C. NELSON

34