IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 05-075

2006 MT 282

_____

KARL ERIC GRATZER,                              )
                                                )
            Petitioner,                         )           O P I N I O N
        v.                                      )              and
                                                )           O R D E R
MIKE MAHONEY,                                   )
                                                )
            Respondent.                         )

_____

¶1     Karl Eric Gratzer, who was convicted of deliberate homicide in 1982 and who is

presently serving a life sentence without the possibility of parole (plus ten additional

years for using a dangerous weapon while perpetrating the deliberate homicide)

petitioned this Court for a writ of habeas corpus.  As a preliminary matter, Gratzer

challenges the constitutionality of § 46-22-101(2), MCA (2003), suggesting that the

statute, by prohibiting a petitioner from challenging the validity of a sentence,

impermissibly suspends the writ of habeas corpus.  Substantively, Gratzer maintains that

the District Court violated his constitutional rights and exceeded its authority when it

declared him ineligible for parole.  Gratzer insists that § 46-18-202(2), MCA (1981)

("Additional Restrictions on Sentence"), does not permit such a parole restriction to be

imposed upon a life sentence.  Gratzer also contends that the District Court violated his

constitutional rights when it designated him a "dangerous offender," because, he asserts,

the court lacked the authority to designate a person serving a life sentence as a

"dangerous offender."  Finally, relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120

1

S. Ct. 2348 (2000), Gratzer argues that the District Court violated his constitutional rights when, absent a specific charge and a jury finding that Gratzer had used a weapon, it sentenced him to a consecutive ten-year term for the use of a weapon in the commission of an offense. We address each argument in turn.

## I. Constitutionality of § 46-22-101(2), MCA (2003)

¶2      Section 46-22-101(2), MCA (2003), provides, in pertinent part:

> The writ of habeas corpus is not available to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal.

Gratzer, who is attacking the validity of his sentence, challenges the constitutionality of § 46-22-101(2), MCA (2003). We recently addressed this issue in *Lott v. State of Montana*, 2006 MT 279, wherein we held that the procedural bar to habeas corpus petitions contained in § 46-22-101(2), MCA (2003), is unconstitutional as applied to facially invalid sentences. Since Gratzer's challenges draw into question the facial validity of his sentence,[1] we conclude that the procedural bar to his habeas corpus petition is not applicable, and we address the merits of his claims.

¶3      We evaluate the legality of a sentence according to the sentencing statutes in effect at the time a defendant is sentenced. *State v. Finley*, 276 Mont. 126, 147, 915 P.2d 208,

---

[1]Based on the wording of the sentencing statutes and parole eligibility statutes, Gratzer contends the court had no authority to restrict parole eligibility for a person serving a "life" sentence. Gratzer similarly argues that the sentencing statutes do not allow the court to impose a dangerous offender designation to someone serving a life sentence. Finally, Gratzer argues that the sentencing statutes are unconstitutional in that they allow a judge to impose a weapon enhancement absent a specific jury finding beyond a reasonable doubt.

221 (1996). Gratzer was sentenced in 1982. Accordingly, we examine Gratzer's sentence through the lens of the 1981 Montana Code.

## II. Parole Ineligibility

¶4      Gratzer contends that the District Court violated his constitutional rights when it declared him ineligible for parole while serving a life sentence. Gratzer interprets the sentencing statutes and parole eligibility statutes to distinguish between determinate time sentences—statutorily dubbed "term" sentences, according to Gratzer—and indeterminate life sentences, and suggests that the statutory scheme, therefore, does not authorize a court to remove a prisoner's eligibility for parole if the prisoner is serving a life sentence. Essentially, Gratzer argues that the statute that authorizes a court to restrict parole eligibility, because it speaks only of "a sentence of imprisonment in the state prison for a *term* exceeding 1 year," § 46-18-202(2), MCA (1981) (emphasis added), does not apply to life sentences. Gratzer notes that a life sentence carries a statutorily mandated restriction on parole during the first thirty years of the sentence, § 46-23-201(1)(b), MCA (1981), and insists that courts lack authority to affix any additional parole restrictions to a life sentence.

¶5      The structure of the statutory framework authorizing sentences and parole restrictions and the statutory terminology pertaining thereto, however, undermine Gratzer's argument and evince the legislature's clear intent to enable courts to impose life sentences without the possibility of parole. Gratzer correctly points out that his "life sentence" carries a statutorily mandated restriction on parole during the first thirty years of his incarceration, § 46-23-201(1)(b), MCA (1981), as distinguished from the parole

eligibility of prisoners serving "time sentence[s]" (which is dictated by the duration of the sentence), § 46-23-201(1)(a), MCA (1981). Gratzer overlooks the essential fact that the statutory provisions delineating parole eligibility for prisoners serving both "time sentence[s]," and "life sentence[s]," explicitly yield to § 46-18-202(2), MCA (1981), which allows a court to impose "the restriction that the defendant be ineligible for parole and participation in the supervised release program while serving his term." *See* § 46-23-201(1), MCA (1981) (providing that the parole board shall release certain prisoners on parole, "except . . . persons serving sentences imposed under 46-18-202(2)"). This explicit exception to parole eligibility applies equally to the ensuing statutory subsections governing time sentences, § 46-23-201(1)(a), MCA (1981), and life sentences, § 46-23-201(1)(b), MCA (1981). This statutory structure clearly reflects the legislature's intent to authorize a sentencing court to impose parole ineligibility on either a life sentence or a time sentence.

¶6     This discernment of legislative intent is supported by the criminal code's repeated references to *term* sentences. "Term" is used throughout the criminal code to refer to the duration of a sentence without any indication that it is meant to refer exclusively to determinate time sentences. *See, e.g.*, § 46-23-103(4), MCA (1981), and § 46-23-1001(3), MCA (1981) (defining "parole" as "release to the community of a prisoner by the decision of the board prior to the expiration of his *term*," and thereby indicating that if a prisoner serving a life sentence may be released on parole, then his sentence is for a "term" of life) (emphasis added); *see also*, § 46-23-216(2), MCA (1981), "Duration of parole" (mandating that "[t]he period served on parole or conditional release shall be

deemed service of the *term* of imprisonment, and . . . the total time served may not exceed the maximum *term* or sentence," thereby implying that "term" applies equally to determinate time sentences and to life sentences, or else there is no delineation of the duration of parole for prisoners serving life sentences) (emphasis added); § 45-2-101(21) MCA (1981), (defining "felony" as "an offense in which the sentence imposed upon conviction is death or imprisonment in the state prison for any *term exceeding 1 year*") (emphasis added).  The statutes defining parole and establishing its duration refer to the "term" of a sentence.  By use of this nomenclature, the legislature evidently intended to refer both to prisoners serving determinate time sentences and to prisoners serving life sentences.  Otherwise, § 46-23-201(1)(b), MCA (1981) (establishing the parole eligibility of prisoners serving a life sentence), would be rendered null by exclusion of life sentences from the very definition of parole.  We must interpret a statutory scheme so as to give meaning and effect to each provision, whenever possible.  Section 1-2-101, MCA (2005).  Thus, we interpret "a sentence of imprisonment in the state prison for a term exceeding 1 year," in § 46-18-202(2), MCA (1981), as referring to all felonies (this being the exact definition of "felony," § 45-2-101(21), MCA (1981)), including those punishable by a life sentence,[2] rather than as a cryptic means of limiting the court's authority to restrict the parole eligibility of those prisoners serving life sentences.

---

[2]Crimes that punish by the imposition of a life sentence are properly classified as felonies.  A crime is classified as a misdemeanor if the sentence imposed is "imprisonment in the state prison for any term of one year or less."  Section 45-2-101(36), MCA (1981).  A crime is classified as a felony if it is punished by death or imprisonment in the state prison for a term exceeding one year.  Section 45-2-101(21), MCA (1981).  Offenses that are punished by life sentences are not explicitly designated as either felonies or misdemeanors, but they are clearly more properly classified as felonies.

¶7     In addition to the structure of the statutory framework and the repeated use of "term" in the criminal code to generically refer to the duration of a sentence, common sense buttresses our interpretation of the statutory scheme.  A life sentence could conceivably endure for a period of less than one year, but only if the prisoner dies within one year of being sentenced.  Section 46-23-201(1)(b), MCA (1981), however, provides that a prisoner serving a life sentence "may [not] be paroled until he has served 30 years, less the good time allowance provided for in 53-30-105."  Pursuant to § 53-30-105(1), MCA (1981), a prisoner may accrue good time credits at a rate of fifteen days per month, at most.  Consequently, a prisoner must serve *at least fifteen years* of a life sentence before first becoming eligible for parole.  If a prisoner who has been sentenced to life imprisonment lives long enough to become eligible for parole, he has necessarily been committed to serve, and has in fact served, "a sentence of imprisonment in the state prison for a term exceeding 1 year," and the sentencing court is therefore authorized to "impose the restriction that the defendant be ineligible for parole and participation in the supervised release program . . . ."  Section 46-18-202(2), MCA (1981).  In light of the several foregoing reasons, the District Court did not exceed its sentencing authority nor violate Gratzer's constitutional rights when it sentenced Gratzer to a sentence of life without the possibility of parole.

**III. Dangerous Offender Designation**

¶8     Having determined that the District Court did not violate Gratzer's constitutional rights when it sentenced him to life without parole, we can easily dispense with his claim that the court violated his constitutional rights when it designated him a "dangerous

6

offender" for all purposes. Gratzer argues that a dangerous offender designation cannot be applied to a life sentence and that the only legitimate purpose for designation as a dangerous offender is to affect a prisoner's parole eligibility. A prisoner serving a determinate time sentence becomes eligible for parole after serving one-half of his sentence, less good time allowances, while a prisoner who is designated as a non-dangerous offender becomes eligible for parole after serving only one-quarter of his sentence, less good time allowances. Section 46-23-201(1)(a), MCA (1981).

¶9 Ultimately, the District Court's designation of Gratzer as a "dangerous offender" has no effect on the length of time he must serve before becoming parole eligible. Irrespective of this designation, Gratzer's life sentence and ineligibility for parole preclude him from ever becoming eligible for parole. Accordingly, we conclude that the District Court did not violate Gratzer's constitutional rights when it designated him as a "dangerous offender" for all purposes.

**IV. Sentence Enhancement for the Use of a Weapon**

¶10 Gratzer argues that the District Court violated his constitutional rights when it sentenced him to a consecutive ten-year term for using a weapon in the commission of the homicide, absent a specific charge and a jury's finding of that fact beyond a reasonable doubt. His argument relies squarely on the decision of the United States Supreme Court in *Apprendi* and on its progeny, *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002). Notwithstanding Gratzer's contention that his conviction did not become final until ninety days after the Ninth Circuit denied his petition for a federal writ of habeas corpus in January 2005, *see*

7

*Gratzer v. Mahoney*, 397 F.3d 686 (9th Cir. 2005), his conviction actually became final for purposes of collateral review when Gratzer's time for petitioning the United States Supreme Court for *direct review* expired, ninety days after this Court's 1984 affirmance of Gratzer's conviction on direct appeal, *see State v. Gratzer*, 209 Mont. 308, 682 P.2d 141 (1984). *See Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S. Ct. 948, 953 (1994) ("[a] state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied"). Gratzer's conviction became final long before the Supreme Court decided *Apprendi*, *Blakely* or *Ring*. Consequently, our ability to consider his claim that relies on these decisions depends on whether they apply retroactively to cases on collateral review. *See State v. Egelhoff*, 272 Mont. 114, 125, 900 P.2d 260, 267 (1995) ("[r]etroactivity is properly treated as a threshold question" (quoting *Teague v. Lane*, 489 U.S. 288, 300-01, 109 S. Ct. 1060, 1070 (1989))), *rev'd on other grounds by Montana v. Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013 (1996).

¶11 Gratzer does not argue that *Apprendi*, *Blakely* or *Ring* do apply retroactively to cases on collateral review. Instead, by his insistence that his conviction did not become final until after these decisions were rendered, Gratzer appears to concede that none of these cases would apply retroactively. If so, he has correctly interpreted the writing on the walls, as we now confirm that *Apprendi* and its progeny do not apply retroactively to cases on collateral review.

8

¶12 Pursuant to the United States Supreme Court's ruling in *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. Here, the District Court, rather than the jury, found that Gratzer had used a weapon in committing deliberate homicide and therefore the court imposed a consecutive ten-year sentence enhancement. Clearly, the District Court's imposition of a consecutive ten-year sentence on top of a life sentence increased the penalty for Gratzer's crime precisely ten years beyond the prescribed statutory maximum sentence for deliberate homicide, rendering *Apprendi* potentially applicable. *See* § 45-5-102(2), MCA (1981) (authorizing the court to impose sentences of death, life imprisonment or imprisonment for between ten and one hundred years on a person convicted of deliberate homicide). The dispositive question, however, is whether *Apprendi* should apply retroactively to Gratzer's collateral challenge to his sentence.

¶13 This Court has adopted the *Teague* Court's two-part "threshold" test for determining whether a procedural rule of constitutional law should be applied retroactively on collateral review. *See Egelhoff*, 272 Mont. at 126, 900 P.2d at 267 ("[*Teague*'s] view of retroactivity for cases on collateral review is binding upon this Court"); *see also State v. Goebel*, 2001 MT 155, ¶¶ 7-17, 306 Mont. 83, ¶¶ 7-17, 31 P.3d 340, ¶¶ 7-17, *abrogated on other grounds by Gundrum v. Mahoney*, 2001 MT 246, ¶ 13, 307 Mont. 96, ¶ 13, 36 P.3d 890, ¶ 13; *State v. Whitehorn*, 2002 MT 54, ¶¶ 30-42, 309 Mont. 63, ¶¶ 30-42, 50 P.3d 121, ¶¶ 30-42 (clarifying that the *Teague* test properly

applies when determining whether to retroactively apply procedural rules of constitutional law, but does not apply to substantive rules of constitutional law). Under the plurality opinion[3] in *Teague*, new constitutional rules of criminal procedure do not apply retroactively to cases on collateral review unless: (1) the rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'"; or (2) the rule qualifies as a "watershed rule[] of criminal procedure." *Teague*, 489 U.S. at 310-11, 109 S. Ct. at 1075-76.

¶14    The Supreme Court, applying *Teague*, has held that *Ring* does not apply retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519 (2004). The Court's reasoning supports the conclusion that neither *Apprendi* nor *Blakely* would apply retroactively.    The Court first concluded that *Ring*, and, by implication, *Apprendi* and *Blakely,* announced a procedural rule, insofar as they "regulate only the *manner of determining* the defendant's culpability . . . ." *Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523. *Apprendi* simply allocates the fact-finding function to the jury and prescribes the appropriate standard of proof. As the Supreme Court observed with respect to a similar allocation in *Ring*, "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules . . . ." *Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523. *Apprendi* fails to satisfy the first *Teague* exception, as it announces a rule that does not inhibit the State's ability to substantively proscribe and punish a defendant for using a weapon in the commission of an offense, but merely establishes procedures that the State

_____

[3]A majority of the Supreme Court subsequently adopted the test first pronounced by the plurality opinion, joined by only four Justices in *Teague*. *See Penry v. Lynaugh*,

10

must follow in doing so.  Pursuant to *Teague*, in order to apply retroactively, such procedural rules must constitute "'watershed rules of criminal procedure . . . without which the likelihood of an accurate conviction is *seriously* diminished.'"  *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523 (quoting *Teague*, 489 U.S. at 311, 313, 109 S. Ct. at 1076, 1077).  The Court concluded that it is "implausible that judicial fact-finding so '*seriously* diminishe[s]' accuracy as to produce an "'impermissibly large risk'" of injustice."  *Schriro*, 542 U.S. at 356, 124 S. Ct. at 2525.  The federal courts of appeals unanimously[4] agree that the *Apprendi* line of cases does not apply retroactively to cases on collateral review.  *See U.S. v. Jenkins*, 333 F.3d 151, 153-54 (3rd Cir. 2003) (declining to apply *Apprendi* retroactively, and citing similar decisions by the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits); *see also Sepulveda v. U.S.*, 330 F.3d 55, 61 (1st Cir. 2003) ("a decision . . . by a judge (on the preponderance standard) rather than a jury (on the reasonable-doubt standard) is not the sort of error that necessarily undermines the fairness . . . of judicial proceedings") (quotations omitted, ellipses in original); *Coleman v. U.S.*, 329 F.3d 77, 90 (2nd Cir. 2003).  In light of the overwhelming weight of authority and the fact that neither Gratzer, his attorney, nor amicus for the Montana Association for Criminal Defense Lawyers presented this Court with an argument for applying *Apprendi* and its progeny retroactively, we decline to part ways with our federal counterparts.  Accordingly, we hold that *Apprendi* does not apply retroactively to cases on collateral review in Montana courts and therefore conclude that the District Court did

492 U.S. 302, 313-14, 109 S. Ct. 2934, 2944 (1989) (applying the two exceptions to non-retroactivity announced by *Teague*).

not violate Gratzer's constitutional rights when it imposed an additional ten years on Gratzer for his committing deliberate homicide with a weapon.

¶15    Each of Gratzer's three claims fails on the merits. Therefore,

¶16    IT IS ORDERED that Karl Eric Gratzer's petition for a writ of habeas corpus is denied.

_____

[4]Only the Court of Appeals for the District of Columbia has yet to decisively declare *Apprendi* non-retroactive.

¶17     IT IS FURTHER ORDERED that the Clerk of this Court give notice of this order

by mail to counsel of record as well as to petitioner personally.

DATED this 1st day of November, 2006.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS