DA 11-0058

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 34

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

ROZELL ROLAND COOK,

  Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
       In and For the County of Cascade, Cause No. CDC 99-044
       Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      Joslyn Hunt, Chief Appellate Defender; Shilo Hernandez,
      Assistant Appellate Defender, Helena, Montana

      Robin A. Meguire; Attorney at Law, Great Falls, Montana

    For Appellee:

      Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
      Assistant Attorney General, Helena, Montana

      John Parker, Cascade County Attorney; Great Falls, Montana

          Submitted on Briefs: January 4, 2012

              Decided: February 14, 2012

Filed:

     _____
           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 In 1999, Rozell Roland Cook (Cook) pled guilty via an *Alford*[1] plea to two charges of felony sexual assault in violation of § 45-5-502, MCA. He was sentenced to the Department of Corrections (DOC) for two concurrent, 20-year terms with ten years suspended. He was classified as a tier III sexual offender, and his sentence imposed numerous conditions on the suspended portion related to this classification.

¶2 The State moved to revoke the suspended portion of Cook's sentence on June 17, 2010—two days before he was scheduled to be released from custody. The District Court of the Eighth Judicial District, Cascade County, revoked Cook's suspended sentence and sentenced him to two concurrent, 10-year commitments to the DOC with five years suspended. Cook timely appeals from the District Court's disposition order revoking his suspended sentence. We affirm in part, reverse in part, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

¶3 The suspended portion of Cook's sentence contained 25 total conditions. The following four played some role in his revocation:

1. Defendant shall be placed under the supervision of the Adult Probation and Parole Bureau during the suspended portion of the sentence and shall follow all rules and regulations thereof.

. . .

---

[1] *See N.C. v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

6. Defendant shall obtain any counseling/evaluations, at his own expense, as deemed appropriate by his supervising officer and shall follow all recommendations of his counseling/evaluations.

. . .

10. Defendant shall obtain sex offender counseling by an MSOTA [Montana Sexual Offender Treatment Association] recognized therapist and abide by all of the expenses, conditions and recommendations of the therapist. . . .

. . .

15. Defendant's place of residence shall not be within 1500 feet of a school, playgrounds, toy stores, etc. . . .

¶4 Having served nearly 10 years and completed sexual offender treatment under his initial commitment, Cook's pre-parole plan listed his sister-in-law's Great Falls address as his residence upon release. However, he was notified in January, 2010 that this address violated the condition of his suspended sentence that prohibited him from residing within 1500 feet of certain locations. Cook was then told by his institutional probation officer that he could stay at a rescue mission in Great Falls, but this was later ruled out because of its proximity to a women's athletic center. His probation officer then informed him he could be released as a transient. Three days before his release, however, Cook was told that his outpatient treatment provider was dropping him because of lack of adequate housing. Cook was now in violation of condition 10 as well. The next day, on June 17, the State petitioned to revoke his suspended sentence, alleging that he was in violation of conditions 1, 10 and 15. Cook was arrested while still an inmate and held pending hearings in September and November of 2010.

3

¶5     With the hearings pending, Cook found providers for outpatient treatment in both Great Falls and Helena.  Blair Hopkins was willing to accept Cook as a client in Helena, and Dr. Donna Zook was willing to treat him in either city.  He also found potentially suitable housing in each community.  In Great Falls, Cook found a trailer park with other sexual offenders living in it that his probation officer  was willing to approve.  They also found an apartment that complied with his residency conditions.  In Helena, he obtained a commitment from God's Love Shelter.

¶6     The State argued that the Helena shelter was inappropriate because it served women and children, although those populations resided on a separate, locked floor.  Similarly, the State opposed the Great Falls trailer park residence because a rebuttal witness informed the court that she drove past the park and it was "virtually across the street" from school bus stops.  The witness did concede, however, that several other sex offenders had been paroled to that particular park.  As for the Great Falls apartment, the State's witness testified that while it was not near schools, daycares, or parks, "grandmothers, reside within the building that provide daycare to their grandchildren."  Travel to Helena for treatment was rejected because Cook could not be supervised there by his parole officer.  Finally, the State opposed treatment in Great Falls by Dr. Zook because she was not a member of MSOTA.  Cook presented evidence by an investigator who testified that in two months of effort, he found a single landlord who would rent Cook one of three apartments.  Only one of those apartments satisfied condition 15.  Cook argued that the DOC made no effort to help him comply with his conditions, and

4

that because of his lack of culpability and the fact that there were alternatives available, due process required consideration of alternatives to revocation.

¶7 The District Court found that Cook violated conditions 1 and 15 of his suspended sentence by not having an approved residence on the eve of his release. Instead of finding that he had violated condition 10, the court found that he violated condition 6 with respect to treatment and counseling. The District Court found that "with respect to residence, [Cook] has not identified a place of residence outside the 1,500 feet from schools, playgrounds, places where children congregate, etc. . . in the nearly five months that have elapsed since his discharge dates." The court rejected the Great Falls apartment complex because it contained "at least nine units, and maybe more, in which it can be assumed that children live and congregate." Treatment from Dr. Zook was rejected because she was not MSOTA qualified, and the court was unwilling to consider Cook living at the shelter or travelling to Helena for his treatment. The court opined, "This is the defendant's issue and the difficulty is a result of his conduct and record. And that is not something that the Court can remedy or overlook." In addition to revoking Cook's suspended sentence and sentencing him to two concurrent, 10-year commitments to the DOC with five years suspended, the District Court reimposed the conditions of Cook's original suspended sentence and added 16 more.

¶8 Cook initially claims that the District Court lacked authority to revoke his suspended sentence because the petition to revoke was not filed during the term of the suspended sentence. He also claims that the District Court erred in finding that he violated the conditions of his suspended sentence when he was still in custody and had

5

yet to have the opportunity to comply with the conditions. He urges that it was an abuse of discretion and due process violation to revoke his suspended sentence when his alleged violations were not willful and alterative measures were available to meet the State's penological interests. Finally, he argues that his revocation sentence contains illegal sentencing conditions.

¶9 *Issue one*: *whether the District Court exceeded its statutory authority, in violation of § 46-18-203(2), MCA (1999), when it considered and granted the State's petition to revoke Cook's suspended sentence that was filed before the period of suspension had begun.*

¶10 *Issue two: whether the District Court abused its discretion by revoking Cook's suspended sentence when his violations were unwillful.*

¶11 *Issue three*: *whether the District Court imposed illegal conditions on Cook's revocation sentence.*

STANDARDS OF REVIEW

¶12 We review a district court's decision to revoke a suspended sentence for abuse of discretion and whether a preponderance of the evidence supported the court's decision. *State v. Stiffarm*, 2011 MT 9, ¶ 8, 359 Mont. 116, 250 P.3d 300. The trial judge must be reasonably satisfied that the conduct of the probationer has not been what the probationer agreed it would be if the probationer were given liberty. *State v. Goff*, 2011 MT 6, ¶ 13, 359 Mont. 107, 247 P.3d 715. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Burke*, 2005 MT 250, ¶ 11, 329 Mont.

6

1, 122 P.3d 427. However, when the issue presented is whether the district court had authority to take a specific action, the question is one of law and is subject to de novo review. *Stiffarm*, ¶ 8.

¶13 Where a defendant was sentenced to more than one year of actual incarceration, and therefore is eligible for sentence review, we review the sentence for legality only. *State v. Bullplume*, 2011 MT 40, ¶ 10, 359 Mont. 289, 251 P.3d 114.

## DISCUSSION

¶14 *Issue one: whether the District Court exceeded its statutory authority, in violation of § 46-18-203(2), MCA (1999), when it considered and granted the State's petition to revoke Cook's suspended sentence that was filed before the period of suspension had begun.*

¶15 In *Stiffarm*, we concluded that then-existing case law that allowed prosecutors to file petitions to revoke before the start of the suspended sentence was contrary to the plain language of § 46-18-203(2), MCA (1999), which at the time provided: "[T]he petition for a revocation must be filed with the sentencing court during the period of suspension or deferral." *Stiffarm*, ¶ 19. Because the State filed its petition to revoke two days before the commencement of Cook's suspended sentence, he argues that the District Court lacked legal authority to revoke his suspended sentence. The State argues that our *Stiffarm* holding should only be applied prospectively, thus applicable to cases between the decision date of January 26, 2011, and April 20, 2011, when the Legislature amended § 46-18-203(2), MCA, in response to the case. We are persuaded by the State's argument.

7

¶16  When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *State v. Reichmand*, 2010 MT 228, ¶ 14, 358 Mont. 68, 243 P.3d 423. However, when an offender appeals the revocation of a suspended sentence, he does not attack the validity of his conviction. Rather, he attacks the validity of his sentence. *See* § 46-21-101, MCA (providing for collateral remedy from sentences). A revocation proceeding is a "purely administrative action designed to determine whether a parolee or probationer has violated the conditions of his parole or probation, not a proceeding designed to punish a criminal defendant for violation of a criminal law." *State v. Haagenson*, 2010 MT 95, ¶ 15, 356 Mont. 177, 232 P.3d 367. Revocation subjects the defendant to execution of the original sentence as though he had never been given a suspension of sentence. *Haagenson*, ¶ 16. This process, however, "is not a criminal adjudication, does not require proof of a criminal offense, [and] does not impose punishment for any new offense." *Haagenson*, ¶ 16. As such, the posture of our review in this case is collateral in nature.

¶17  When a conviction is already final and a collateral remedy is sought, a "new rule" applies only in limited circumstances. *State v. Egelhoff*, 272 Mont. 114, 126, 900 P.2d 260, 267 (1995). New substantive rules generally apply retroactively. *Shriro v. Summerlin*, 542 U.S. 348, 351-352, 124 S. Ct. 2519, 2522 (2004). A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. *Shriro*, 542 U.S. at 353, 124 S. Ct. at 2523. Retroactive application is needed in situations that "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal" or faces a punishment that the law cannot

8

impose upon him. *Shriro,* 542 U.S. at 351-352, 124 S. Ct. at 2522 (internal quotation omitted).

¶18 New rules of procedure, however, do not typically apply retroactively. *Shriro*, 542 U.S. at 352, 124 S. Ct. at 2523. New constitutional rules of criminal procedure apply only when they are "watershed rules of criminal procedure . . . without which the likelihood of an accurate conviction is seriously diminished." *Gratzer v. Mahoney*, 2006 MT 282, ¶ 14, 334 Mont. 297, 150 P.3d 343 (quoting *Shriro*, 542 U.S. at 352, 124 S. Ct. at 2523 (internal quotation omitted)). Rules that regulate only the manner of determining the defendant's culpability are procedural. *Gratzer*, ¶ 14 (citing *Shriro*, 542 U.S. at 353, 124 S. Ct. at 2523).

¶19 In Cook's case the State moved to revoke his suspended sentence two days before its commencement and over seven months before we announced *Stiffarm*. The timing of the State's petition conformed to our then-existing interpretation of § 46-18-203(2), MCA. *See e.g. Stiffarm*, ¶ 10; *State v. LeDeau*, 2009 MT 276, ¶¶ 19-21, 352 Mont. 140, 215 P.3d 672; *State v. Morrison*, 2008 MT 16, ¶¶ 13-18, 341 Mont. 147, 176 P.3d 1027. Procedural statutes in effect at the time that a case proceeds to trial are the rules that are to be applied to the resolution of that dispute. *State v. Edwards*, 2011 MT 210, ¶ 16, 361 Mont. 478, 260 P.3d 396. *Stiffarm* overturned a prior line of cases involving the judicial interpretation of § 46-18-203(2), MCA. In doing so, we announced a rule that did not inhibit the State's ability to substantively proscribe and punish a defendant, but merely established procedures that the State must follow when moving to revoke a suspended

sentence. Moreover, this was not a watershed rule that could have application to the accuracy of the defendant's conviction.

¶20 Accordingly, we hold that *Stiffarm* applies prospectively to cases on collateral review in Montana courts and therefore conclude that the District Court did not lack authority to revoke Cook's suspended sentence.

¶21 *Issue two: whether the District Court abused its discretion by revoking Cook's suspended sentence when his violations were not willful.*

¶22 Cook contends that the District Court abused its discretion in revoking his suspended sentence because there was no evidence that he actually violated a condition. He argues that his substantive due process rights were violated when the District Court failed to consider alternatives to revocation, and that any violations were not willful. The State simply counters that Cook did indeed violate conditions of his suspended sentence, and thus the District Court's decision was supported by evidence. The State further argues that Cook's due process rights do not require that his violations be willful, and that the District Court considered, but rejected, any offered alternatives to revocation.

¶23 Where the judge finds that the offender has violated the terms and conditions of the suspended sentence, the judge has the authority to revoke the suspended sentence. *State v. Tirey*, 2010 MT 283, ¶ 21, 358 Mont. 510, 247 P.3d 701. A single violation of the terms and conditions of a sentence is sufficient to support a court's revocation of that sentence. *Tirey*, ¶ 21. However, the Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes procedural and substantive limits on the revocation of the conditional liberty created by probation or parole. *State v. Lee*, 2001

10

MT 176, ¶ 18, 306 Mont. 173, 31 P.3d 998 (citing *Bearden v. Georgia*, 461 U.S. 660, 666, 103 S. Ct. 2064, 2069 (1983)).

¶24 In *Bearden*, the United States Supreme Court considered the substantive limits imposed by the Due Process Clause on revocation for failure to pay a fine and restitution in the absence of evidence that the defendant was culpable or that alternative forms of punishment were inadequate. *Bearden*, 461 U.S. at 665, 103 S. Ct. at 2069. The Supreme Court concluded:

> If the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate methods of punishing the defendant are available.

*Bearden*, 461 U.S. at 668-669, 103 S. Ct. at 2070-2071.

¶25 Accordingly, the revocation resulted in a denial of due process. The holding of *Bearden*, however, does not prohibit a revocation of probation in other contexts, even if the failure to obey a condition of probation is not found to be intentional or willful. *See Black v. Romano*, 471 U.S. 606, 611, 105 S. Ct. 2254, 2257 (1985).

¶26 The Supreme Court's decision in *Bearden* was limited to "revocation proceedings for failure to pay a fine or restitution." *Bearden*, 461 U.S. at 672, 103 S. Ct. at 2073. Importantly, the Supreme Court went on to observe: "We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation." *Bearden*, 461 U.S. at 668, 103 S. Ct. at 2070 n.9. Montana case law also holds that violations of non-financial conditions need not necessarily be willful in order to justify revocation. *See Lee*, ¶ 21.

11

¶27 In *Lee,* defendant's suspended sentence was conditioned on completing a sexual offender treatment program while incarcerated. *Lee*, ¶ 5. Lee spent several years on a wait list for the various levels of the sexual offender program, a delay that was further delayed by a sit down strike. *Lee*, ¶ 6. He nearly completed phase II before his release date and subsequent revocation. We found that when the circumstances are such that failure to complete a condition of probation is solely the fault of the State, due process requires the trial court to consider adequate alternatives to incarceration. *Lee*, ¶ 23.

¶28 Despite our conclusion in *Lee,* we have subsequently rejected analysis based upon fault when an alleged good faith effort to comply with conditions nevertheless results in the violation of conditions related to the defendant's rehabilitation or the protection of the public. *See e.g. Tirey*, ¶ 24 (revocation affirmed over defendant's allegation that his good faith effort was frustrated by his probation officer's unreasonable demands, his poverty, and bad weather); *State v. Senn*, 2003 MT 52, ¶¶ 24-26, 314 Mont. 348, 66 P.3d 288 (revocation affirmed despite argument that good faith effort to comply was derailed by poor health and poverty); *State v. Williams*, 1999 MT 240, ¶ 24, 296 Mont. 258, 993 P.2d 1 (defendant's inability to secure sex offender treatment frustrated purpose of probation).

¶29 Our holding in *Williams* is instructive in this case. Williams was convicted of sexual intercourse without consent and received a suspended sentence conditioned upon his acceptance into either of two state pre-release centers and completion of a sex offender treatment program. *Williams*, ¶¶ 5-6. However, both pre-release center programs rejected Williams because of his lack of social skills, immaturity, and behavior. *Williams*, ¶ 9. The State's motion to revoke Williams' probation was granted because he

could not comply with the conditions of suspension. *Williams*, ¶ 10. We affirmed the revocation because Williams' inability to secure treatment "frustrated the purpose of probation, namely, his rehabilitation." *Williams*, ¶ 17. In *Lee*, we reaffirmed this conclusion, opining: "We do not believe our holding in *Williams* suffers from any constitutional infirmity." *Lee*, ¶ 21. Importantly, we observed that the court in *Williams* considered alternatives, but determined that none short of incarceration was suitable. *See Lee*, ¶ 22.

¶30 In this case, the District Court found Cook to be an "extremely dangerous sex offender," with "questionable" prospects for rehabilitation.[2] Cook's burden was to come up with a plan to show that he could be released to serve his suspended sentence in compliance with its conditions. Yet, even five months after the petition to revoke was filed, Cook had failed to find an MSOTA-qualified treatment provider and a residence that complied with his conditions of suspension. Thus, the court found him to remain a "high risk to children in need of the highest level of supervision," and determined that no alternatives short of incarceration were suitable. Cook's reliance upon *Lee* is misplaced because there is no indication that the State was responsible for any portion of this failure. Whether Cook's violations were or were not voluntary is not dispositive. Such an approach to the revocation question ignores the fact that circumstances other than conduct chargeable to the defendant may nevertheless frustrate the purposes of probation and suspension of sentences—specifically, rehabilitation and protection of the public.

---

[2] Cook admitted in his psychosexual evaluation that he struggles on a daily basis not to molest children, and previously admitted during court-ordered treatment for a prior charge in Alaska that he had sexually abused approximately 200 children.

13

We hold that the District Court did not abuse its discretion in revoking Cook's suspended sentence.

¶31 *Issue three*: *whether the District Court imposed illegal conditions on Cook's revocation sentence.*

¶32 Cook's revocation sentence reimposed the conditions of his original suspended sentence and added another 16. Cook challenges two of the newly imposed conditions, along with the 1500 foot residential exclusionary zone condition of his original suspended sentence. He argues that these conditions are punitive in nature, and thus constitute a greater sentence upon revocation than that to which he was originally sentenced.

¶33 When the court finds that the offender has violated the conditions of the suspended sentence, it may "revoke the suspension of sentence and require the offender to serve either the sentence imposed or any lesser sentence." Section 46-18-203(7)(a)(iii), MCA (1997). Determining whether the sentence at revocation is the "same or lesser" than the sentence originally imposed requires that we look at the substance of the conditions to determine whether they are punitive in nature. *Tirey*, ¶ 28. We review new conditions in the context of the entire sentence; that is, whether the overall revocation sentence constitutes more or less punishment than the sentence originally imposed. *Tirey*, ¶ 28. The District Court sentenced Cook to serve the 10 years originally suspended, but now with 5 years suspended. In other words, Cook's revocation sentence suspends 5 years of a commitment that he could have otherwise been required to serve. As such, the revocation sentence conforms to the requirements of § 46-18-203(7)(a)(iii), MCA (1997).

14

¶34 Although the 2010 sentence requires the integration of 16 new conditions, many of those conditions merely reiterate the conditions of Cook's original suspended sentence. Condition two of Cook's revocation sentence prohibits him from frequenting "places where children congregate," including "parties, family functions, [and] holiday festivities" without probation and parole approval and a chaperone. Cook argues that this is an unduly restrictive intrusion into his family relations and right to associate. However, § 46-18-203(7)(a)(ii), MCA (1997), allows for modified or additional terms or conditions. And, when found "necessary to obtain the objectives of rehabilitation and the protection of the victim and society," § 46-18-202(1)(c), MCA, permits a court to impose "restrictions on the offender's freedom of association." Likewise, Cook alleges that the 1,500 foot residential exclusionary zone in the original sentence is unduly punitive because it is "tantamount to banishment." In *State v. Muhammad*, 2002 MT 47, 309 Mont. 1, 43 P.3d 318, we did hold that a condition banishing the offender from Cascade County was "not reasonably related to the goals of rehabilitation and is broader than necessary to protect the victim."

¶35 We use a nexus test to determine whether a restriction or condition meets the requirements of § 46-18-202(1)(g), MCA. *State v. Guill*, 2011 MT 32, ¶ 59, 359 Mont. 225, 248 P.3d 826. This test is satisfied so long as the condition is reasonably related to the objectives of rehabilitation and protection of the victim and society, and has a correlation to the underlying offense or the offender. *Guill*, ¶ 59. Here, the nexus between these conditions and Cook, considering his substantial history as a sexual offender, as well as his current offense, is readily apparent. The last time Cook was left

unsupervised with children he sexually assaulted them. Further, the District Court found that Cook still presented an extreme threat to children. Thus, restricting Cook's contact with children not only serves to protect society, but the condition will serve the objective of rehabilitation in that it reduces his likelihood of reoffending. We find that the District Court did not abuse its discretion in imposing conditions reasonably designed to protect society and serve Cook's rehabilitation.

¶36 Finally, the revocation sentence requires that Cook be "placed on GPS monitoring for the entirety of his supervision at his own expense." This service is currently unavailable in Montana. As such, the State concedes the issue as an impossible condition. Consequently, this matter will be remanded to the District Court to strike the GPS requirement as illegal.

CONCLUSION

¶37 We affirm the District Court's revocation of Cook's suspended sentence. However, we reverse the District Court's imposition of Condition 15 in the revocation order and remand to strike the illegal GPS condition. We affirm the District Court's imposition of the other new conditions.

¶38 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

16

We concur:

/S/ JIM RICE
/S/ MICHAEL E WHEAT
/S/ BETH BAKER


Justice Beth Baker, concurring.

¶39 While I continue to believe that *Stiffarm* was wrongly decided, it now represents the law as determined by this Court. The "'concerns for stability, predictability and equal treatment' in the law" I voiced in *Stiffarm* (¶ 22 (Baker, J., dissenting) (quoting *Formicove, Inc. v. Burlington N.*, 207 Mont. 189, 194, 673 P.2d 469, 472 (1983)), would not be served by overruling it, as the State advocates we do in this case. The legislature quickly changed the statute to leave no doubt about the intent we ascribed to it for many years. Continuing the roller coaster at this point would advance little purpose. Rather, for the reasons stated by the Court, I concur that *Stiffarm*'s application should be prospective only. The petition to revoke Cook's suspended sentence was filed properly according to the law in effect at the time of Cook's crimes, the law in effect at the time of revocation, and the law in effect now. For that reason, I join the Court's opinion here.


/S/ BETH BAKER


Justice Jim Rice joins in the concurring Opinion of Justice Beth Baker.


/S/ JIM RICE


17

Justice James C. Nelson, dissenting.

¶40    I dissent.

¶41    The State has misstated the issue in this case, and the Court has unfortunately taken the bait.  The question here is not whether *State v. Stiffarm*, 2011 MT 9, 359 Mont. 116, 250 P.3d 300, should be applied retroactively.  This is not a retroactivity case.

¶42    Our law is well established and unequivocal:  "The law in effect at the time an offense is committed controls as to the possible sentence for the offense, *as well as the revocation of that sentence*."  *State v. Tirey*, 2010 MT 283A, ¶ 26, 358 Mont. 510, 247 P.3d 701 (emphasis added) (citing *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297).  "[A] person has the right to be sentenced *under the statutes which are in effect at the time of the offense*, and . . . imposition of a sentence under statutes not in effect at the time an offense was committed is an *ex post facto* application of the law and therefore unconstitutional."  *State v. Striplin*, 2009 MT 76, ¶ 30, 349 Mont. 466, 204 P.3d 687 (emphasis added) (citing *Tracy*, ¶ 16).

¶43    The 1997 Montana Code Annotated was in effect at the time of Cook's offense. Section 46-18-203(2), MCA (1997), states that "[t]he petition for a revocation must be filed with the sentencing court *during* the period of suspension or deferral" (emphasis added).  The revocation of Cook's sentence is controlled by this language.

¶44 So, what does "[t]he petition for a revocation must be filed with the sentencing court during the period of suspension or deferral" mean? In *Stiffarm*, ¶¶ 13-14, this Court explained exactly what this language means:

> The language of § 46-18-203(2), MCA, is clear and unambiguous. It states that a petition for revocation must be filed "*during* the period of suspension or deferral." Section 46-18-203(2), MCA (emphasis added). The meaning of "during" is: "1: throughout the continuance or course of; 2: at some point in the course of," *Webster's Third New International Dictionary* 703 (G. & C. Merriam Co. 1971), "1: throughout the entire time of; all through; 2: at some point in the entire time of; in the course of." *Webster's New World College Dictionary* 443 (4th ed., Wiley Publishing 2002).
> The plain meaning of § 46-18-203(2), MCA, is that the State may properly file a petition to revoke a suspended or deferred sentence only after the sentence has commenced and before it concludes, not before and not after the period of suspension or deferral.

¶45 In *Stiffarm*, ¶¶ 16-17, this Court explained that § 46-18-203(2), MCA, has *always* had this meaning, ever since its enactment in 1983. The problem was that some of our post-1983 precedents had relied on pre-1983 decisions in suggesting that a district court has the authority to consider and grant a petition to revoke a suspended sentence that is filed *before* the defendant begins serving that sentence. We corrected that erroneous conception in *Stiffarm*.

¶46 While the State consumes some 14 pages of its brief on appeal attacking and bemoaning *Stiffarm*, the fact remains that *Stiffarm* is the law. Contrary to the Court's analysis, our decision in *Stiffarm* did not announce any "new rules." All this Court did in *Stiffarm* is simply interpret and apply the plain language of § 46-18-203(2), MCA, which stated that "[t]he petition for a revocation must be filed with the sentencing court *during* the period of suspension or deferral" (emphasis added). This is the language which

existed in the 1997 MCA. This is the language, therefore, which governed the District Court's authority to revoke Cook's sentence. We said in *Stiffarm* that "during" really does mean "during," not "before" and not "after." Accordingly, the District Court lacked authority to revoke Cook's suspended sentence based on the State's petition for revocation that was filed two days *before* Cook was scheduled to begin serving the suspended sentence.

¶47 Retroactivity analysis is completely irrelevant to this case. And in applying such analysis here, the Court violates the fundamental principle that the revocation of a suspended sentence is controlled by "the statutes which are in effect at the time of the offense." *Tracy*, ¶ 16. Regrettably, I believe the Court has, in fact, continued "the roller coaster" in this case. Concurrence, ¶ 39. I would reverse on Issue One and not address Issues Two and Three.

¶48 I dissent.

/S/ JAMES C. NELSON