DA 19-0689

FILED

11/16/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0689

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 295

CITY OF MISSOULA,

       Plaintiff and Appellee,

  v.

FATON SADIKU,

       Defendant and Appellant,

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-19-211
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Chad Wright, Appellate Defender, Alexander H. Pyle, Assistant Appellate Defender, Helena, Montana

       For Appellee:

          Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant Attorney General, Helena, Montana

          Jim Nugent, Missoula City Attorney, Douglas Schaller, Deputy City Attorney, Missoula, Montana

Submitted on Briefs:  September 29, 2021

Decided:  November 16, 2021

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Fanton Sadiku violated a condition of his deferred six-month sentence for misdemeanor sexual assault when he violated an order of protection. The City of Missoula Municipal Court revoked his deferred sentence and imposed a six-month suspended sentence. The Fourth Judicial District Court affirmed. On appeal from the District Court, Sadiku raises the following two issues:

1. *Did the Municipal Court fail to make the required findings under § 46-18-203, MCA, before revoking Sadiku's deferred sentence for an alleged compliance violation?*

2. *Did the Municipal Court abuse its discretion when it revoked Sadiku's six-month deferred sentence and imposed a six-month suspended sentence?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In August 2017, P.K. filed a police report alleging that Sadiku, her former spouse, groped and kissed her without consent in a Missoula, Montana grocery store. The City of Missoula charged Sadiku with misdemeanor sexual assault, which carries a maximum jail sentence of six months. Sadiku pleaded nolo contendere in exchange for a deferred six-month sentence. His deferred sentence was contingent on his compliance with an order of protection that prohibited him from travelling within 1,500 feet of P.K.'s residence or place of employment, subject to only a few exceptions. The travel provision in the order stated:

> The Respondent is allowed to travel I-90, the frontage road, Duncan Street, and Rattlesnake Drive which are within the 1500' restriction of the Petitioner's residence and is allowed to go to businesses such as Eastgate

2

Albertson's and the Pressbox as long as the Petitioner is not at that business. The Respondent is also allowed to travel South Avenue and Brooks Street which are within the 1500' restriction of the Petitioner's work place and is allowed to go to businesses such as Tremper Shopping Center as long as the Petitioner is not at that business.

¶3     In April 2018, Sadiku travelled on Bancroft Street, which is within 1,500 feet of P.K.'s place of employment, while driving his son to high school. The school is outside the 1,500-foot zone, and Sadiku could have taken an alternate route that would not have violated the travel provision. The City filed a petition to revoke Sadiku's deferred sentence and charged him separately for violation of an order of protection.

¶4     In March 2019, a jury found Sadiku not guilty of violating the order of protection. The Municipal Court subsequently held a revocation hearing. The court took judicial notice of trial testimony and exhibits, including P.K.'s testimony that Sadiku pulled in front of her on Bancroft and "brake checked" her. Sadiku argued that he did not violate the order when he drove his son to school because he was permitted to travel to "businesses such as" Tremper Shopping Center, Albertson's, and the Pressbox. The Municipal Court found that the school was not a similar business and determined, by a preponderance of the evidence, that Sadiku violated the order of protection. The court revoked Sadiku's deferred sentence and sentenced him to six months in jail with six months suspended.

¶5     On Sadiku's appeal, the District Court affirmed, reasoning that, regardless of whether the school is similar to the enumerated businesses in the order of protection, Sadiku violated the travel provision when he drove on Bancroft Street.

**STANDARDS OF REVIEW**

¶6 On Sadiku's appeal from the Municipal Court, the District Court acted "as an intermediate appellate court." *City of Missoula v. Pope*, 2021 MT 4, ¶ 5, 402 Mont. 416, 478 P.3d 815 (citation omitted). On appeal here, we review the case "as if the appeal originally had been filed in this Court." *Pope*, ¶ 5.

¶7 Sadiku's first contention is a question of statutory interpretation, which we review de novo. *See State v. Brooks*, 2010 MT 226, ¶ 11, 358 Mont. 51, 243 P.3d 405 (citation omitted). We review Sadiku's second contention to determine whether the Municipal Court abused its discretion and whether its decision to revoke his sentence was supported by a preponderance of the evidence. *See State v. Beams*, 2020 MT 156, ¶ 6, 400 Mont. 278, 465 P.3d 1178 (citation omitted).

**DISCUSSION**

¶8 *1. Did the Municipal Court correctly apply the law when it revoked Sadiku's sentence?*

¶9 In 2017, as part of a criminal justice reform effort led by the 2015 Commission on Sentencing, the Montana Legislature amended § 46-18-203, MCA. *Pope*, ¶¶ 6-7 (citing *State v. Oropeza*, 2020 MT 16, ¶¶ 3-4, 398 Mont. 379, 456 P.3d 1023). The Legislature established a system known as the Montana Incentives and Interventions Grid (MIIG), which is a Department of Corrections (DOC) guide to "community supervision of offenders on parole or with deferred or suspended sentences." *Pope*, ¶ 6 (citation omitted).

¶10 Before 2017, § 46-18-203, MCA, "permitted a court to revoke a suspended sentence . . . [if an] offender violated [any] condition of her suspended sentence." *Pope*, ¶ 8

4

(citing § 46-18-203(7)(a), MCA (2015)). As amended, however, § 46-18-203, MCA, distinguishes between "compliance violations" and "non-compliance violations." *Pope*, ¶ 7. An offender commits a non-compliance violation when he commits a new criminal offense; possesses a firearm in violation of a condition of probation; stalks, harasses, or threatens a victim; absconds; or fails to comply with sexual or violent offender treatment. Section 46-18-203(11)(b), MCA. An offender commits a compliance violation, on the other hand, when she violates any other condition of supervision. Section 46-18-203(11)(b), MCA. Although non-compliance violations allow for immediate revocation of a suspended or deferred sentence, compliance violations do not. Section 46-18-203(7)(a)(iii), (8)(b)-(c), MCA. If an offender commits a compliance violation, the presiding judge may revoke the suspended or deferred sentence only if the judge determines that the DOC has exhausted the MIIG procedures and "the offender will not be responsive to further efforts under the [MIIG]." Section 46-18-203(8)(b)-(c), MCA; *Pope*, ¶ 7.

¶11 Prior to its 2017 amendment, § 46-18-203, MCA, applied equally to felony offenders and misdemeanor offenders. *Pope*, ¶ 8 (citation omitted). We held in *Pope*, however, that the 2017 MIIG requirements apply only to felony revocations and not to misdemeanor revocations. *Pope*, ¶¶ 8, 19.

¶12 Sadiku argues that violating the order of protection was a compliance violation and that the court therefore should have required exhaustion of the MIIG procedures pursuant to § 46-18-203(8)(b)-(c), MCA, before revoking his sentence. Its failure to do, Sadiku

5

contends, renders his sentence illegal. Sadiku first argues that *Pope* should be overruled because (1) the plain language of § 46-18-203, MCA, states that the statute applies to "any offender"; and (2) there is no statutory authority to revoke misdemeanor sentences unless § 46-18-203, MCA, applies to misdemeanants. Sadiku contends, alternatively, that *Pope* is distinguishable because the 2017 amendments to § 46-18-203, MCA, took effect before his offense occurred and, unlike Pope, he did not have adequate notice that his deferred sentence could be revoked for a compliance violation.

### a. Our decision in *Pope* is not manifestly wrong

¶13 *Stare decisis* is a fundamental doctrine that "reflects our concerns for stability, predictability, and equal treatment[.]" *Formicove, Inc. v. Burlington N.*, 207 Mont. 189, 194, 673 P.2d 469, 472 (citations omitted). Although *stare decisis* does not require that we follow a "manifestly wrong decision," *Formicove*, 207 Mont. 194-95, 673 P.2d 472, it is this Court's "preferred course." *Certain v. Tonn*, 2009 MT 330, ¶ 19, 353 Mont. 21, 220 P.3d 384 (citation and quotation omitted). Sadiku asserts that *Pope* is manifestly wrong because § 46-18-203(12), MCA, states that the statute applies to "any offender." We considered and rejected this argument in *Pope*. *Pope*, ¶ 14. We held that, when § 46-18-203, MCA, is read in conjunction with other related statutes, it is clear that "the MIIG is used only in the DOC's supervision of felons." *Pope*, ¶ 15 (citations omitted). We explained that only felony probation and parole is within the province of the DOC, with counties and municipalities responsible for supervising misdemeanor offenders. *Pope*, ¶ 15 (citations omitted). We pointed out that the MIIG guidelines are referenced

6

only in connection to the DOC probation and parole officers and do not mention or purport to direct misdemeanor probation officers. *Pope*, ¶ 15 (citations omitted). We also considered the legislative intent of the statute and concluded that the Legislature intended to apply the 2017 amendments to felony revocations only. *Pope*, ¶ 19.

¶14 Sadiku takes the Court to task for considering the statute's structure and intent in *Pope*, asserting that the plain language of § 46-18-203, MCA, is "clear and unambiguous on its face." *See State v. Felde*, 2021 MT 1, ¶ 16, 402 Mont. 391, 478 P.3d 825 (citation omitted). Sadiku correctly points out that "[l]egislative intent is to be ascertained, in the first instance, from the plain meaning of the words used by the Legislature." *State v. Alpine Aviation, Inc.*, 2016 MT 283, ¶ 11, 385 Mont. 282, 384 P.3d 1035 (citation and quotation omitted). We are obligated, nonetheless, to "construe a statute as a whole and in light of its surrounding sections to avoid conflicting interpretations." *Felde*, ¶ 16 (citation omitted). We also construe a statute "without isolating specific terms from the context in which they are used by the Legislature." *State v. Triplett*, 2008 MT 360, ¶ 25, 346 Mont. 383, 195 P.3d 819. "We must interpret a statutory scheme so as to give meaning and effect to each provision, whenever possible." *Gratzer v. Mahoney*, 2006 MT 282, ¶ 6, 334 Mont. 297, 150 P.3d 343 (citation omitted). *See also Grenz v. Mont. Dep't of Nat. Res. & Conservation*, 2011 MT 17, ¶ 28, 359 Mont. 154, 248 P.3d 785 ("We should not glean meaning from the wording of any particular section or sentence. We instead must read the statutes in their entirety and give meaning to each section.") (citations omitted). We rejected Pope's similar plain language argument, and Sadiku does not convince us that

we can give meaning to the plain language of § 46-18-203, MCA, without examining the contemporaneous statutory scheme of the MIIG. We thoroughly considered the related MIIG statutes in *Pope* and held that they did not apply to misdemeanor crimes. *Pope*, ¶¶ 15-18. Misdemeanor probation officers do not consult the MIIG guidelines—the DOC does—and they have no statutory authority to engage the MIIG procedures. *See Pope*, ¶ 16.

¶15 Sadiku next argues that, without applying § 46-18-203, MCA, as amended in 2017, to misdemeanor revocations, there is no statutory authority to revoke misdemeanor sentences. Sadiku contends that the only remaining authority for misdemeanor revocations is the 2015 version of § 46-18-203, MCA, which was repealed and cannot apply to him. Though we foreclosed the applicability of the MIIG requirements to misdemeanor revocations in *Pope*, we did not abolish a court's authority to revoke misdemeanor sentences under § 46-18-203, MCA (2017). *See Pope*, ¶ 19. The remaining provisions in § 46-18-203, MCA, still apply. Subsection (1) permits the presiding judge to set a revocation hearing "[u]pon the filing of a petition for revocation showing probable cause that the offender has violated any condition of a . . . deferred imposition of a sentence[.]" Section 46-18-203(1), MCA. Subsection (6) governs the standard of proof at the revocation hearing, which is a "preponderance of the evidence." Section 46-18-203(6)(a), MCA. Subsection (7) permits the presiding judge to revoke the sentence upon a finding "that the offender has violated the terms and conditions of the . . . deferred sentence and the violation is not a compliance violation[.]"

Section 46-18-203(7)(a)(iii), MCA. Because the distinction between compliance and non-compliance violations applies only to offenses subject to the MIIG guidelines, violation of a misdemeanor deferred sentence necessarily cannot be a compliance violation. Until the Legislature remedies the confusing omission of misdemeanor revocation processes in the statute, courts must derive their authority to revoke misdemeanor sentences from § 46-18-203(7)(a)(iii), MCA. We did not conclude in *Pope* that the 2015 version of the statute applies to misdemeanor revocations, nor does our holding there compel such an outcome. Sadiku has not convinced us that our holding in *Pope* was manifestly wrong.

### b. *Pope* is not distinguishable

¶16 Sadiku argues, alternatively, that if we do not overrule *Pope*, we should distinguish it. Unlike the defendant in *Pope*, Sadiku committed his offense after the 2017 amendments to § 46-18-203, MCA, took effect and before *Pope* was decided. As such, Sadiku asserts that he did not have fair warning of the law during any stage of his proceedings because a person without formal legal training would interpret the plain language of § 46-18-203, MCA, to mean that only non-compliance violations trigger immediate revocation. The validity of Sadiku's argument hinges on two assumptions: first, that his violation was a compliance violation and, second, that Sadiku could have known it was a compliance violation at the time. We are not persuaded by either assumption. A non-compliance violation includes "a new criminal offense" and "behavior . . . that could be considered stalking, harassing, or threatening the victim of the offense[.]" Section 46-18-203(11)(b)(i), (iii), MCA. Although the jury found Sadiku not guilty of

9

violating an order of protection, he was charged with violation of an order of protection—a "separate offense"—and the outcome of his jury trial could have been different. Further, Sadiku's behavior could be considered stalking, harassing, or threatening the victim. It is not clear that Sadiku committed a compliance violation or that Sadiku could have known that violating the order of protection was a compliance violation at the time he violated it. Sadiku's argument that he lacked notice of the possibility of revocation thus logically is flawed. Sadiku cannot establish that the difference in timing between Pope's offense and his offense warrants a different outcome in this case.

¶17 We conclude that Sadiku's sentence revocation was not illegal and that the Municipal Court's application of the law was correct.

¶18 *2. Did the Municipal Court abuse its discretion when it revoked Sadiku's deferred sentence and imposed a six-month suspended sentence?*

¶19 A court abuses its discretion when it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Reopelle*, 2017 MT 196, ¶ 19, 388 Mont. 271, 399 P.3d 903. "Revocation subjects the defendant to execution of the original sentence as though he had never been given a suspension of sentence." *State v. Cook*, 2012 MT 34, ¶ 16, 364 Mont. 161, 272 P.3d 50 (citation omitted). Sadiku argues that the imposition of a suspended sentence was unduly harsh and unreasonable in his case because the alleged violation was a one-time occurrence when he mistakenly took the wrong road while driving his son to school. The Municipal Court found that the high school was not similar to the businesses Sadiku was permitted to patronize, such as Tremper Shopping Center, Albertson's, and the Pressbox.

10

It took judicial notice of Sadiku's trial record and heard additional testimony at the revocation hearing. It applied the correct preponderance of the evidence standard when it found that Sadiku violated the order by driving on Bancroft Street. The court also determined that, pursuant to §§ 45-5-502(2)(a) and 46-18-201(1)-(2), MCA, a plea of nolo contendere in a misdemeanor sexual assault conviction supports a suspended, deferred, or imposed six-month jail sentence. On review of the record, we conclude that the court did not act arbitrarily or unreasonably when it determined, by a preponderance of the evidence, that Sadiku violated a condition of his deferred sentence and when it imposed a six-month suspended sentence.

## CONCLUSION

¶20    The Municipal Court acted lawfully and did not abuse its discretion when it revoked Sadiku's deferred sentence and imposed a suspended sentence. Its March 28, 2019 Sentencing Order and the District Court's October 8, 2019 Opinion and Order are affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

11